COMMONWEALTH *vs.* MILO M., a juvenile.

Worcester. November 7, 2000. - January 5, 2001.

Present (Sitting at Brockton): MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, COWIN,
& SOSMAN, JJ.

*Delinquent Child. Threatening. Practice, Criminal,* Findings by judge. *Evidence,* Judicial notice. *Constitutional Law,* Freedom of speech and press. *Words,* "Threatened."

At the trial of a juvenile for threatening a teacher, the judge properly applied an objective standard to determine the juvenile's intention and ability to commit a crime. [151-152]

The content of two drawings made by a juvenile, depicting a figure labeled with the juvenile's name aiming a gun at another figure labeled with a teacher's name, along with his angry defiant demeanor toward the teacher, sufficiently demonstrated the juvenile's intention to commit a crime [152-155], and sufficient circumstantial evidence supported a finding that the teacher's apprehension that the juvenile had the ability to carry out the threat was reasonable and justifiable [155-158].

Evidence at the trial of a juvenile for threatening his teacher supported the judge's finding that the juvenile communicated the threat to his teacher. [158]

Where sufficient evidence supported a judge's conclusion that a juvenile's drawings constituted a criminal threat, no rights of the juvenile under the First Amendment to the United States Constitution were violated. [158-159]

COMPLAINT received and sworn to in the Worcester Division of the Juvenile Court Department on January 27, 1999.

The case was heard by *George F. Leary,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kathleen M. Kelly* for the juvenile.

*Sandra L. Hautanen,* Assistant District Attorney, for the Commonwealth.

The following submitted briefs for amici curiae:

*Thomas F. Reilly,* Attorney General, & *Barbara F. Berenson,* Assistant Attorney General, for the Attorney General.

*David M. Moore,* City Solicitor, & *Elizabeth M. Sanning,*

Assistant City Solicitor, for city of Worcester.

*Donald S. Bronstein*, Committee for Public Counsel Services, for Committee for Public Counsel Services.

IRELAND, J. Milo M., a juvenile defendant, appeals from the Juvenile Court's adjudication of him as delinquent by reason of threatening his teacher in violation of G. L. c. 275, § 2. While public schools remain very safe places for children to be, with respect to this appeal, we face the important and troubling question whether, given recent, highly publicized incidents of school violence, a drawing that depicts a student pointing a gun at his teacher constitutes a threat. We conclude that it does, and thus, affirm the adjudication of delinquency.

1. *Facts and procedural history.* On October 27, 1998, the twelve year old juvenile sat at a desk in the hall directly outside of his classroom and drew a picture. While the juvenile was awaiting the principal's arrival to address with him "some issues from the previous day," a teacher at the school confiscated the drawing and showed it to the juvenile's teacher, Mrs. F. The drawing depicted a violent scene of the juvenile shooting Mrs. F. See Appendix A. Meanwhile, the juvenile left the desk, entered the classroom, took a piece of paper, returned to the desk in the hall and "proceeded to draw another picture." Moments later, the juvenile reentered the classroom and stood near the doorway. He held up the second picture, which depicted the juvenile pointing a gun at Mrs. F. See Appendix B. He looked at Mrs. F and in a defiant tone said, "[D]o you want this one too?" From where she was standing, Mrs. F could not see the drawing. However, after seeing the first drawing, and "[f]rom his posture, [and] the look on his face," Mrs. F realized that the juvenile was very upset and very angry. Because she did not want the juvenile to approach her, she instructed him to give the drawing to another student, who then gave it to Mrs. F. The juvenile returned to his desk in the hall without further comment. Mrs. F testified that, after seeing the second drawing, she became "apprehensive" and "[a]fraid for [her] safety." Apparently, as a result of these incidents, the juvenile was suspended immediately for three days and sent home. However, at the end of that same school day, both Mrs. F and the teacher who confiscated the first drawing witnessed the juvenile at the school, loitering very near Mrs. F's car.

Subsequently, the Worcester Division of the Juvenile Court Department issued a complaint, charging the juvenile with

threatening Mrs. F in violation of G. L. c. 275, § 2.[1] At trial, the judge adjudicated the juvenile delinquent by reason of threatening his teacher, on the basis of the second drawing.[2] The juvenile appealed, and we transferred the case on our own motion.

2. *The standard applied.* The word "threatened" is not defined in the Massachusetts threat statute, G. L. c. 275, § 2. *Commonwealth* v. *Elliffe*, 47 Mass. App. Ct. 580, 583 (1999). However, "[t]he elements of threatening a crime include an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat." *Commonwealth* v. *Sholley*, 432 Mass. 721, 725 (2000), quoting *Commonwealth* v. *Robicheau*, 421 Mass. 176, 184 (1995). See *Robinson* v. *Bradley*, 300 F. Supp. 665, 668-669 (D. Mass. 1969) (articulating standard for finding threat in violation of G. L. c. 275, §§ 2 et seq.).

Here, the juvenile claims that the judge applied an incorrect standard in finding that the juvenile's conduct met all the requisite elements of threatening to commit a crime.[3] Because the juvenile did not object to the judge's findings at trial, we review this alleged error under the substantial risk of a miscarriage of justice standard. *Commonwealth* v. *Gorassi*, 432 Mass. 244, 249 & n.8 (2000).

Specifically, the juvenile claims that the judge focused his ruling on Mrs. F's subjective state of mind and, in so doing, failed to make the requisite finding of the juvenile's objective intention and ability to commit a crime. While it is true that a threat must be tested objectively, see *Commonwealth* v. *DeVin-*

---

[1]General Laws c. 275, § 2, provides: "If complaint is made to any such court or justice that a person has threatened to commit a crime against the person or property of another, such court or justice shall examine the complainant and any witnesses who may be produced, on oath, reduce the complaint to writing and cause it to be subscribed by the complainant."

[2]The judge found that the first drawing could not have constituted a threat because the juvenile himself did not communicate it to Mrs. F.

[3]The judge stated: "I don't find that it is necessary for the graphic nature of the violence to be depicted in any way other than the drawing, I don't think you have to be literate in order to write a threatening note, I think that drawings can constitute threats and that, so I find that it was communicated, that the injury if carried out would constitute a crime and that it was reasonable to fear that the defendant had the intention and ability to carry out the threat. I make a finding of sufficient facts in this case."

*cent,* 358 Mass. 592, 595 (1971) (affirming violation of attempted extortion statute, G. L. c. 265, § 25); *Commonwealth* v. *Sholley,* 48 Mass. App. Ct. 495, 497, *S.C.,* 432 Mass. 721 (2000) ("the decisional law requires that the threat be made in circumstances that would reasonably justify apprehension on the part of an ordinary person"); *Commonwealth* v. *Strahan,* 39 Mass. App. Ct. 928, 930 (1995) (threat assessed by determining whether defendant's statements reasonably caused apprehension), we disagree with the juvenile's claim that the judge failed to do so in this case.

As the juvenile concedes, the judge based his ruling on a finding that "it was reasonable to fear that the [juvenile] had the intention and ability to carry out the threat." This objective finding reflects the judge's correct application of the law. The absence of any other references to an objective standard in his ruling does not create a substantial risk of a miscarriage of justice. Contrast *Commonwealth* v. *Gorassi, supra* at 248-249 (substantial risk of miscarriage of justice where judge incorrectly expanded definition of assault to include "an attempt to do psychological harm"). Indeed, "[w]hen a case is tried without a jury, the legal framework in which facts are to be found is not generally stated with the precision and amplitude of instructions to a jury. As an initial matter, it is presumed that the judge as trier of fact applies correct legal principles." *Commonwealth* v. *Colon,* 33 Mass. App. Ct. 304, 308 (1992). The record supports this presumption. Moreover, the juvenile has not shown that the judge "incorrectly applied a subjective standard to determine whether a threat to commit a crime [had] occurred," as the juvenile contends. Finally, the juvenile did not ask the judge for further clarification of the law being applied. See *id.* ("[a] judge sitting without a jury may . . . make an express ruling on a disputed point of law . . . upon specific request of counsel who desires to preserve a point for appeal"). The judge's finding was proper.

3. *Findings of fact and sufficiency of the evidence.* The juvenile next argues that the judge's determinations that the juvenile (1) had the intention and ability to commit a crime that would justify apprehension on the part of Mrs. F; and (2) communicated the threat to Mrs. F were clearly erroneous.[4] These factual findings are subject to the "clearly erroneous" standard,

---

[4]The juvenile also seeks de novo review of the second drawing because "the trial court's determination of [the juvenile's] ability and intention was

and we conclude the judge's findings were not clearly erroneous.[5] *Commonwealth* v. *Motta*, 424 Mass. 117, 121 (1997). See *Commonwealth* v. *King*, 429 Mass. 169, 172 (1999) ("we defer to the . . . judge's finding of fact in the absence of clear error"); *Commonwealth* v. *Ward*, 426 Mass. 290, 294 (1997). Having reviewed the entire trial transcript, we conclude that there is ample evidence in the record to support these findings. Thus, we are not "left with the firm conviction that a mistake has been committed." *Commonwealth* v. *Tavares*, 385 Mass. 140, 146, cert. denied, 457 U.S. 1137 (1982). Therefore, the findings are not clearly erroneous.

The juvenile also seems to argue that there was insufficient evidence to support the judge's finding that the juvenile threatened Mrs. F. Specifically, the juvenile contends that the judge "had no evidence of [the juvenile's] ability to commit the threatened crime before [him], and therefore, the trial court based its decision on insufficient evidence."

Initially, we note that, because the juvenile made no request

---

based solely on the documentary evidence of the second drawing." See *Balcam* v. *Hingham*, 41 Mass. App. Ct. 260, 261 (1996); *Guempel* v. *Great Am. Ins. Co.*, 11 Mass. App. Ct. 845, 848 (1981). This argument is without merit because the evidence was "of mixed character — live and documentary." *Cornwall* v. *Forger*, 27 Mass. App. Ct. 336, 338 (1989). In addition to the two drawings, the Commonwealth presented live testimony from both Mrs. F and the teacher who confiscated the first drawing.

[5]We do this because the juvenile characterized these determinations as factual findings subject to the "clearly erroneous" standard in his brief. However, it is not clear that such findings were actually factual in nature, and may be more aptly characterized as "ultimate findings of fact and rulings of law." *Commonwealth* v. *Judge*, 420 Mass. 433, 447 (1995). *Commonwealth* v. *Stirk*, 16 Mass. App. Ct. 280, 287 (1983) (Dreben, J., dissenting), *S.C.*, 392 Mass. 909 (1984), quoting *Cuyler* v. *Sullivan*, 446 U.S. 335, 342 (1980) ("ultimate ruling is a 'mixed determination of law and fact'"). Such findings "as they bear on issues of constitutional dimension, are open for reexamination by this court, [but] such ultimate findings are 'entitled to substantial deference by this court.' " *Commonwealth* v. *Judge, supra,* quoting *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985). See *Commonwealth* v. *Conkey*, 430 Mass. 139, 144 (1999) ("we give substantial deference to [such findings], but we independently apply the constitutional principles to the facts found"). Indeed, "[o]ur appellate function requires that we make an independent determination on the correctness of the judge's 'application of the constitutional principles to the facts as found.' " *Commonwealth* v. *Bookman*, 386 Mass. 657, 661-662 n.6 (1982), quoting *Brewer* v. *Williams*, 430 U.S. 387, 403 (1977). Nonetheless, were we to adhere to this standard, we would "see no sufficient basis for interfering with the findings and conclusion of the judge." *Commonwealth* v. *Bookman, supra.*

for a required finding of not guilty, we review his insufficient evidence claim under the substantial risk of a miscarriage of justice standard. *Commonwealth* v. *McGovern,* 397 Mass. 863, 867-868 (1986). *Commonwealth* v. *Strahan, supra* at 929. In determining whether the evidence was sufficient to support the judge's conclusions, we view the evidence at trial in the light most favorable to the Commonwealth, and "determine whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Lodge,* 431 Mass. 461, 465 (2000), quoting *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). See *Commonwealth* v. *McGovern, supra* at 868. We conclude that the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that the juvenile threatened Mrs. F.

There was sufficient evidence to support the judge's finding that the juvenile expressed an intent to commit the threatened crime and an ability to do so in circumstances that would justify apprehension on Mrs. F's part. See *Commonwealth* v. *Sholley,* 432 Mass. 721, 725 (2000); *Commonwealth* v. *Robicheau, supra* at 183. In making this determination, we consider "the context in which the allegedly threatening [drawing was given to Mrs. F] and all of the surrounding circumstances." *Commonwealth* v. *Sholley, supra.* See *Commonwealth* v. *Elliffe, supra* at 582 (in assessing its sufficiency, evidence "must be interpreted in the context of the actions and demeanor which accompanied [it]"). The juvenile's intention to carry out the threat may be inferred from several facts. First, the content of each drawing separately evidences his intent.[6] The first drawing portrays a figure, labeled with the juvenile's name, pointing what appears to be a gun at another figure, labeled with Mrs. F's name. The Mrs. F figure has her hands clasped in front of her and is crying and pleading, "Please don't kill me." Drawn directly next to the Mrs. F figure is another unlabeled figure, whose head is falling off to the right. At the bottom of the drawing is the word "Blood," written in large letters. See Appendix A. The second drawing depicts a figure labeled with the

---

[6]In finding that the second drawing constituted a threat, the judge considered the first drawing, which he found to "portray[] an act of violence being perpetrated upon the teacher." The fact that the judge ruled that the first drawing was not a separate threat because the juvenile did not communicate it to Mrs. F, see note 3, *supra,* did not diminish its evidentiary value and he could have inferred the juvenile's intent from it.

juvenile's name, aiming a gun at another figure, labeled with Mrs. F's name. Directly above the Mrs. F figure are the words "Pissy Pants." The Mrs. F figure is kneeling with her hands clasped in front of her, and appears to have urinated on herself, suggesting her extreme fear of being shot. Some words are written inside a box drawn under the barrel of the gun; one of the words appears to be "Bang." See Appendix B. The content of both drawings makes the juvenile's intent to harm Mrs. F clear.[7] Second, the juvenile made not just one, but two drawings, both of which depicted images of himself perpetrating violence upon Mrs. F. The judge could have inferred the juvenile's intent from the number of drawings. Third, the juvenile's intent may be inferred from his very angry demeanor and defiant manner toward Mrs. F when he held out the drawing to her. *Commonwealth* v. *Elliffe, supra.* Thus, there was sufficient evidence to support the judge's finding that the drawing was "an expression of an intention to harm [Mrs. F]." *Commonwealth* v. *Sholley,* 432 Mass. 721, 726 (2000).

As to the juvenile's present ability to carry out the threat, the juvenile contends that "there was no direct evidence that the [juvenile] had the ability to commit this crime." There was, however, sufficient circumstantial evidence to support this finding. *Commonwealth* v. *Lodge, supra* at 465, citing *Commonwealth* v. *Nadworny,* 396 Mass. 342, 354 (1985), cert. denied, 477 U.S. 904 (1986) (circumstantial evidence can establish guilt beyond reasonable doubt). *Commonwealth* v. *Woods,* 414 Mass. 343, 354, cert. denied, 510 U.S. 815 (1993) (conviction "may rest entirely on circumstantial evidence"). This is not a case where the finding of ability "rest[s] on surmise, conjecture, or guesswork." *Commonwealth* v. *Donovan,* 395 Mass. 20, 25 (1985), quoting *Commonwealth* v. *Walter,* 10 Mass. App. Ct. 255, 257 (1980). Indeed, as discussed above, the juvenile held the second of two very violent drawings out to Mrs. F in an angry and defiant manner. See *Commonwealth* v. *Elliffe, supra* at 582. Moreover, prior to the incident, the juvenile was sitting out in the hall, awaiting the principal's arrival.

---

[7]The intent that must be expressed is an intent to commit a crime. We note that both drawings depict extreme fear on the part of Mrs. F and express the juvenile's desire to instill such fear on her part. Assuming that the drawings should not be interpreted as an intent to actually shoot Mrs. F, an intent to assault her by means of a dangerous weapon would still constitute an intent to commit a crime.

Although it is not clear exactly what, if anything, the juvenile had done to warrant this discipline, the teacher who confiscated the first drawing testified that "[u]sually, if a student is outside the room, [the student] had done something to cause that situation . . . ." Thus, the judge could have reasonably inferred that the juvenile was already being disciplined, and that Mrs. F, as his teacher, "was familiar with the [juvenile's] history" at school and in her classroom. See *Commonwealth* v. *Sholley*, 48 Mass. App. Ct. 495, 499 (2000).

Moreover, although there is no evidence that the juvenile possessed an immediate ability to carry out the threat at the time he communicated the drawing to Mrs. F, this does "not mean that [the juvenile] could not have carried out his threat at a later time." *Id.* (presence of other individuals capable of intervening at time defendant addressed victim did not render otherwise threatening statements nonthreatening). See *Commonwealth* v. *Ditsch*, 19 Mass. App. Ct. 1005, 1005 (1985) ("absence of immediate ability, physically and personally, to do bodily harm" does not preclude conviction of making threats); *Commonwealth* v. *Strahan*, *supra* at 930 ("[w]hether the [juvenile] ultimately might not carry out the threat is not relevant to the question of the sufficiency of the Commonwealth's proof that a threat was in fact made"). Indeed, the juvenile's ability to carry out the threat in the future could have been inferred from the fact that the juvenile was seen loitering near Mrs. F's car later the same day.

Finally, given the recent highly publicized, school-related shootings by students, we take judicial notice of the actual and potential violence in public schools. Although we note that schools remain very safe places for children to be, such violent episodes are matters of common knowledge, particularly within the teaching community, and thus, are "indisputably true." *Dimino* v. *Secretary of the Commonwealth*, 427 Mass. 704, 707 (1998). *Nantucket* v. *Beinecke*, 379 Mass. 345, 352 (1979). Cf. *Commonwealth* v. *Harris*, 383 Mass. 655, 656-657 (1981) (court took judicial notice "that threats of violent acts directed at court houses have given rise to an urgent need for protective measures"). See, e.g., *In re B.R.*, 732 A.2d 633, 637 (Pa. Super. Ct. 1999) (judge took judicial notice of "climate of apprehension" existing at time juvenile made threatening statements in presence of teacher due to recent, highly publicized school-related shootings by students); *People* v. *Pruitt*, 278 Ill. App. 3d

194, 203 n.1 (1996) (in taking judicial notice of "actual and potential violence in public schools," court noted "[j]udges cannot ignore what everybody else knows: violence and the threat of violence are present in the public schools . . . . [T]eachers . . . have a duty to take whatever lawful steps are necessary to assure that the school premises are safe and weapon free").[8] Recently, "[o]ther children of like age [have] made similar threats . . . and [have] carried them out with tragic consequences for both juveniles and their victims." *In re B.R.,* *supra* at 638.

These factors, when considered in light of the "climate of apprehension" concerning school violence in which this incident

---

[8]We take judicial notice of the fact that, prior to this incident, the following highly publicized school shootings had occurred: On February 2, 1996, in Moses Lake, Washington, a fourteen year old fatally shot a teacher and two students and wounded another student; on February 19, 1997, in Bethel, Alaska, a sixteen year old shot and killed his principal and a student, and wounded two other students; on October 1, 1997, in Pearl, Mississippi, a sixteen year old boy shot his mother, and then went to school and shot nine students, two fatally; on December 1, 1997, in West Paducah, Kentucky, a fourteen year old student shot and killed three students and wounded five others; on March 24, 1998, in Jonesboro, Arkansas, two boys, aged eleven and thirteen years, shot to death four girls and a teacher, and wounded ten others during a false fire alarm; on April 24, 1998, in Edinboro, Pennsylvania, a fourteen year old student was charged with fatally shooting his science teacher at an eighth grade dance; on May 19, 1998, in Fayetteville, Tennessee, an eighteen year old honor student allegedly shot his classmate to death in the parking lot of their high school; on May 21, 1998, in Springfield, Oregon, a fifteen year old boy allegedly shot and killed two of his classmates and wounded more than twenty other students; on June 15, 1998, in Richmond, Virginia, a fourteen year old allegedly wounded one teacher and one guidance counselor in a high school. This tragic trend regrettably continued after the incident at issue in this case occurred. On April 20, 1999, at Columbine High School in Littleton, Colorado, two young men fatally shot fourteen students and one teacher and wounded at least twenty-three others, before taking their own lives. See 25 Feared Dead, 20 Hurt in High School Shooting: Colorado Rampage Ends When 2 Commit Suicide, Courier-Journal (Louisville, Kentucky), April 21, 1999 at 1A; Haney, A Timeline of Recent School Shootings (April 27, 2000); ABC News, An Explosion of Violence (Mar. 28, 2000).

We also note that, in 1985, the United States Supreme Court noted that "in recent years, school disorder has often taken particularly ugly forms: drug use and violent crime in the schools have become major social problems." *New Jersey* v. *T.L.O.*, 469 U.S. 325, 339 (1985). Additionally, in 1995, the United States Supreme Court in a dissent by Justice Breyer noted that "reports, hearings, and other readily available literature make clear that the problem of guns in and around schools is widespread and extremely serious." *United States* v. *Lopez*, 514 U.S. 549, 619 (1995) (Breyer, J., dissenting).

occurred, make Mrs. F's fear that the juvenile could carry out the threat quite reasonable and justifiable. *Commonwealth* v. *Sholley*, 432 Mass. 721, 726 (2000). See *In re B.R., supra* at 637-638.

Finally, we conclude that the record supports the finding that the juvenile communicated the threat, vis-à-vis the second drawing, to Mrs. F. Indeed, the obviously angry juvenile entered Mrs. F's classroom, held out the second violent picture — the content of which was directed at Mrs. F — to her and defiantly asked, "[D]o you want this one too?" Although Mrs. F testified that initially, she could not "really see" the picture, she was able to once she received it from the other student shortly thereafter. From these facts, the judge could have found that the drawing itself, when held out to Mrs. F, communicated the threat. Viewed in the light most favorable to the Commonwealth, the combination of these factors sufficiently supports the finding that the juvenile communicated the threat to Mrs. F.[9] See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). See also *Commonwealth* v. *Sholley*, 432 Mass. 721, 726 (2000); *Commonwealth* v. *Ditsch, supra* at 1005 (judgment affirmed where threat communicated by letter from incarcerated defendant to victim).

This evidence, when viewed as a whole "may constitute the requisite expression [of intention to do bodily harm], and may indicate additionally, in these circumstances, ability and apprehension." *Commonwealth* v. *Elliffe, supra* at 582. Thus, we find that sufficient evidence supports the judge's decision that the drawing constituted a threat.

4. *First Amendment violation.* "[T]he First Amendment [to the United States Constitution] does not protect conduct that threatens another." *Commonwealth* v. *Sholley*, 432 Mass. 721, 726 (2000), quoting *Commonwealth* v. *Robicheau*, 421 Mass. 176, 183 (1995). See *Madsen* v. *Women's Health Ctr., Inc.*, 512 U.S. 753, 773 (1994) ("threats . . . are proscribable under the First Amendment"); *Watts* v. *United States*, 394 U.S. 705, 707 (1969) ("What is a threat must be distinguished from what is constitutionally protected speech"); *United States* v. *Fulmer*, 108 F.3d 1486, 1492-1493 (1st Cir. 1997) ("a true threat is unprotected by the First Amendment"). Because we find there

---

[9]Contrary to the juvenile's assertion, the record does not indicate that the judge considered the question, "Do you want this one too?," as the sole basis for concluding that the threat had been communicated.

was sufficient evidence to support the judge's conclusion that the juvenile's drawing constituted a threat, there is no violation of the juvenile's First Amendment rights. *Commonwealth* v. *Sholley*, 432 Mass. 721, 726 (2000).

The adjudication of delinquency is affirmed.

*So ordered.*

Justice Abrams participated in the deliberation on this case, but retired before the opinion was issued.

APPENDIX A.