COMMONWEALTH *vs.* DANIEL F. SIMMONS, JR.

No. 06-P-428.

Worcester. April 4, 2007. - June 15, 2007.

Present: PERRETTA, SMITH, & MEADE, JJ.

*Practice, Criminal,* Revocation of probation. *Threatening. Evidence,* Threat.

Evidence before the judge at a probation revocation hearing, which established, by a preponderance of the evidence, that the defendant, by making threats to murder others to a therapist at a court-ordered substance abuse evaluation session, intended his threats to reach the targeted persons with the authorities serving as his intended intermediary, was sufficient to demonstrate that the defendant had violated the terms of his probation. [350-351]

COMPLAINTS received and sworn to in the Leominster Division of the District Court Department on July 2, 9, and 14, 2004.

A proceeding for revocation of probation was heard by *John J. Curran, Jr.,* J.

*David J. Rotondo* for the defendant.

*Donna-Marie Haran,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On October 29, 2004, the defendant entered guilty pleas to complaints charging assault and battery and two counts of violations of an abuse prevention order.[1] He was sentenced to concurrent sentences of two and one-half years in the house of correction, eighteen months to be served forthwith, and the balance suspended with supervised probation for three years until October 28, 2008. The victim in the complaints was the defendant's former girlfriend.

On October 21, 2005, the defendant was issued a notice of probation violation alleging that the defendant made threats to

---

[1]The defendant also pleaded guilty to a complaint charging malicious destruction of property over $250; that charge was placed on file with the defendant's consent and is not before us.

kill his former girlfriend and her current boyfriend. The threats took place at a court-ordered substance abuse evaluation session.

At a hearing before a District Court judge, the defendant was found to have violated the conditions of his probation, and the court ordered that the balance of the sentence that had been suspended be imposed. On appeal, the defendant claims that the evidence before the judge was insufficient to constitute a violation of probation where the threat was made at a court-ordered substance abuse evaluation session, and there was no evidence that the defendant was attempting to use the counselor as a conduit for an indirect communication with the victim.

We summarize the evidence before the judge. As a condition of probation, the defendant was required to undergo a substance abuse evaluation. In that regard, a therapist conducted an interview with the defendant as part of the court-ordered evaluation.

At the start of the interview, the therapist explained to the defendant that although anything that the defendant would say during the interview would be confidential, there were limits to such confidentiality. In particular, the defendant was warned that if he gave any information to the therapist that "involves you harming yourself or wanting to kill yourself, wanting to harm or kill anyone else . . . that's where confidentiality ends, when we have to protect someone else or you." The therapist told the defendant that if he made any such statement, she would report it to the "appropriate authorities." The therapist also told the defendant that her written report would be given to the probation department. After receiving the warnings from the therapist, the defendant signed a consent form allowing the evaluation to be released.

During the session, the defendant, while discussing his former girlfriend, who was also the mother of his children, said, "I'm going to kill that fucking bitch." The defendant also stated that he was going to kill her present boyfriend and told the therapist, "[Y]ou can write that down." The defendant implied that they lived in the same town that he was living in and that "they were very close by." When asked by the therapist if he had a plan to carry out his threat, the defendant stated that he would "shoot" both his former girlfriend and her present boyfriend.

After the evaluation concluded, the therapist notified her superiors and the probation department of the statements that the defendant made concerning his plan to shoot his former girlfriend and her present boyfriend. The chief probation officer notified the defendant's former girlfriend of his stated intentions.

At the conclusion of the probation revocation hearing, the judge ruled that the defendant's statements constituted a threat to the defendant's former girlfriend because "he expressed a specific intent to harm her, appeared to have the ability to do so, and made the statement to one who he had reason to know would pass it on to [the former girlfriend]."

On appeal, the defendant argues that the evidence before the judge was insufficient to warrant a revocation of his probation because there was no evidence that the defendant intended that his statements as to his plan to kill his former girlfriend and her present boyfriend would be communicated to them by the therapist.

In the context of the defendant's probation revocation hearing, the Commonwealth was required to prove, by a preponderance of evidence, that the defendant committed a crime, here, making threats to murder his former girlfriend and her present boyfriend. *Commonwealth* v. *Holmgren*, 421 Mass. 224, 226 (1995). Under decisional law, the elements of a threat include "an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat." *Commonwealth* v. *Maiden*, 61 Mass. App. Ct. 433, 434 (2004), quoting from *Commonwealth* v. *Milo M.*, 433 Mass. 149, 151 (2001). There must be "evidence that the person making the threat either communicated it to the person targeted or intended that it be communicated to the person targeted so as to cause fear or apprehension in the victim." *Ibid.* "Thus, when a defendant utters a threat to a third party who 'would likely communicate it to [the ultimate target],' . . . the defendant's act constitutes evidence of [his] intent to communicate the threat to the intended victim." *Commonwealth* v. *Meier*, 56 Mass. App. Ct. 278, 282 (2002), quoting from *Commonwealth* v. *Troy T.*, 54 Mass. App. Ct. 520, 527 (2002). Additionally, "attending circumstances, such as demeanor, prior behavior, and statements, may be relevant to probe the intent of

the [defendant]." *Commonwealth* v. *Troy T.*, 54 Mass. App. Ct. at 529.

Here, the evidence included the following: the underlying convictions of two counts charging the violation of an abuse prevention order and one count of assault and battery relating to the defendant's former girlfriend, the same person targeted by one of the threats at issue in this matter, for which the defendant had already served eighteen months in the house of correction; the therapist's report that indicates that the defendant is "extremely angry, . . . unable to control his rage" and "feels 'no remorse' after hurting others"; the defendant's indication that he wanted the therapist to "write [his threat] down"; and the defendant's knowledge, based on the disclosure by the therapist, that should the defendant make any statements regarding the defendant harming himself or another she would be obligated to inform the "appropriate authorities."

The evidence warranted a finding by a preponderance of the evidence that the defendant intended his threats to reach the targeted persons, with the appropriate authorities, the Leominster police department or the probation department, serving as his intended intermediary. See *Commonwealth* v. *Maiden*, 61 Mass. App. Ct. at 434 (where communication heard by police detective, defendant, even if not specifically intending communication to be heard directly by target, "should reasonably have expected that it would be communicated to [the target] by [the detective]").

The order revoking the defendant's probation is affirmed.

*So ordered.*