Kenton-Walker, Janet, J.
The defendant, Damien Grenga (“Grenga”), is charged with two identical counts of making bomb threats in his high school in violation of G.L.c. 269, §14(b). Grenga moves the court to dismiss the indictment against him, arguing that the Grand Jury heard insufficient evidence for issuing the indictment and that his statements in the school constituted protected free speech under the First Amendment to the United States Constitution and Article 16 of the Massachusetts Declaration of Rights. For the following reasons, Grenga’s motion to dismiss is ALLOWED in part and DENIED in part.
BACKGROUND
The following facts are taken from the Grand Jury minutes. In April 2012, Grenga was a student at Blackstone-Millville Regional High School (the “school”) in Blackstone. On April 13, 2012, Lieutenant Gregory Gilmore (“Lt. Gilmore”) of the Blackstone Police Department obtained information from the school’s guidance counselor with regard to Grenga’s alarming conduct. The guidance counselor had received an e-mail from a student expressing grave concern about Grenga and describing his conduct. During class, Grenga asked the teacher what he would *95 do if he showed up to the school wearing a bomb vest. The teacher confirmed Crenga’s statement to the vice principal of the school. The students in Grenga’s class also provided statements confirming Grenga’s statement.
Grenga also drew a picture of a stick figure person wearing a bomb vest. Under this drawing, Grenga wrote the word “soon.” The teacher did not see this drawing because concerned students erased the drawing immediately.
Later, in an online discussion with other students on Facebook, Grenga made yet another statement which alarmed classmates and school authorities. Students were discussing the upcoming prom. One of the students joked that he would bring a blowup doll to the prom as his date. Grenga responded to this comment, suggesting that the student “fill the doll with 20 pounds of explosives.”
These events, combined with Grenga’s recent appearance and conduct leading up to the alleged threats gravely concerned administrators of the school. One day, for example, Grenga showed up to school with an upside down cross cut into his forehead. Grenga’s friends reported that Grenga had been drinking and doing drugs in the days that led up to the threats.
In addition to the conduct, as well as verbal and written statements, Grenga also demonstrated an interest in Columbine High School, the site of a mass school shooting that killed numerous students. Grenga “liked” Columbine High School on Facebook. The Blackstone Police Department later determined that Grenga had done some research on Columbine High School on his personal computer.[1]
Grenga also researched a substance known as “Solidox,” a household agent allegedly used to make homemade explosives. Grenga solicited friends into driving him to K-Mart to purchase Solidox.
The Commonwealth charged Grenga with two counts of making bomb threats. Lt. Gilmore, who investigated these incidents, testified before the Grand Jury session on December 4, 2014, recounting the above facts. On December 5, 2014, the Grand Jury indicted Grenga on both counts.
DISCUSSION
“[A] court reviewing the sufficiency of evidence before a grand jury should not dismiss if the evidence was adequate ‘to establish the level of probable cause required to support an arrest or search.’ ” Commonwealth v. Brown, 55 Mass.App.Ct. 440, 446-47 (2002), quoting Commonwealth v. McCarthy, 385 Mass. 160, 162-63 (1982). Probable cause is “reasonably trustworthy information... sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense.” Commonwealth v. Stevens, 362 Mass. 24, 26 (1972), quoting Beck v. Ohio, 379 U.S. 89, 91 (1964). Where a grand juiy receives “no evidence of criminality on the part of the accused,” however, “fundamental fairness requires that an indictment be dismissed . . .” Commonwealth v. Cheremond, 461 Mass. 397, 404 (2012) (emphasis in original).
Grenga asserts that there was insufficient evidence before the Grand Jury to prove that he had the requisite intent to threaten anyone and that his statements were not “true threats,” rendering his statements protected under the First Amendment to the United States Constitution and Article 16 of the Massachusetts Declaration of Rights.
The court begins its assessment of the evidence before the Grand Jury with the language of G.L.c. 269, § 14(b), which provides, in pertinent part:
Whoever willfully communicates . . . either directly or indirectly, orally, in writing, by . . . telecommunication device ... a threat [that] an explosive or incendiary device . . . will be used at a place or location, or is present or will be present at a place or location, whether or not the same is in fact used or present. . . shall be punished . . .
To secure an indictment under this language merely requires the Commonwealth to present some evidence that a defendant communicated a threat to have present certain weapons “at a place or location.” Commonwealth v. Kerns, 449 Mass. 641, 654 (2007). The statute protects any “place or location” from threats. Id. at 651. “The offense does not encompass a requirement that the person to whom the threat is communicated be a potential target of the threatened crime.” Id. at 652.
The only issue implicated by Grenga’s motion to dismiss, therefore, is whether any of his actions constituted a “threat” under the statute. The court notes that, under the bomb threat statute, the threat need not even have a “target.” See id. at 654. Therefore, the court will not consider any argument that Grenga’s alleged threats were not communicated to his intended “target.” It is sufficient that Grenga communicated his statements to at least one other person at the school who heard and understood it.[2]
Although the statute itself does not require that the threats be made with intention to place its recipients in fear or apprehension,[3] the court will consider the extent to which Grenga’s statements “were made in circumstances that would reasonably justify apprehension on the part of any ordinary person.” Commonwealth v. Sholley, 48 Mass.App.Ct. 495, 497 (2000). This is because Grenga asserts that his statements were protected under the free speech provisions of the Massachusetts and United States Constitutions. In order for the Commonwealth to demonstrate that Grenga’s statements were not protected under these constitutional provisions, it must show that Grenga “direct[ed] a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.” Virginia v. Black, 538 U.S. 343, 360 (2003) .[4]
*96 The court will therefore consider separately the two threat-related issues: (1) whether sufficient evidence was presented to the Grand Jury to determine that Grenga made a “threat” under c. 269, §14; and if such evidence was presented, (2) whether that threat is nevertheless protected by the First Amendment and Art. 16.
A. ‘Threat” Under G.L.c. 269, §14
A “threat” is “a communicated intent to inflict physical or other harm on any person or on property.” Black’s Law Dictionary 1651 (4th ed. 1968). As the court reads this definition into the bomb threat statute, it finds that indictment under that law requires that the Commonwealth present evidence that a defendant communicated his or her intent to inflict physical or other harm on any person or property using one of the weapons listed in § 14(b). In this case, the listed weapon Grenga mentions is a bomb vest, which would fall under the term “explosive or incendiary device” contained in the statute.
Evidence was presented to the Grand Jury of three separate communications made by Grenga. First, Grenga asked his teacher, “What would you do if I showed up at the school wearing a bomb vest?” Second, Grenga drew a picture of a human figure wearing a bomb vest. Grenga wrote the word “soon” underneath this picture. Third, Grenga suggested that a student fill a doll with twenty pounds of explosives.
Considered individually, the court does not find that the first and third statements communicated Grenga’s intent to inflict physical or other harm to the school or its patrons. The first statement is not affirmative; it is a question. Nowhere in that statement does Grenga say he will bring a bomb vest to the school. He merely asks what his teacher’s response would be if he did bring a bomb vest to the school. Similarly, his online recommendation to a fellow student to fill a blowup doll with explosives and bring it to the prom does not communicate any intent of Grenga’s. Grenga did not exclaim, for instance, that “I will fill a blowup doll with twenty pounds of explosives and bring it to the prom.” Indictment under §14 requires evidence that the defendant made a threat that an explosive device “will be used at a place or location, or is present or will be present at a place or location.”
A jury could find, however, that the drawing was a communication of Grenga’s intent to come to the school wearing a bomb vest. The fact that Grenga wrote the word “soon” under the drawing of the figure with a bomb vest is determinative. By itself, the drawing is just that, an image. It conveys nothing about Grenga’s intent. Viewed together, the inference could be made that the students and Grenga’s teacher were meant to understand that sometime “soon” Grenga would come to the school wearing a bomb vest. Although Grenga’s question to his teacher is not a threat, it provides further context for the grand jury to determine that Grenga intended to threaten his near-future presence at the school while wearing a bomb vest.
Therefore, the court finds that sufficient evidence was presented to the Grand Jury such that it was entitled to indict Grenga for making a bomb threat under G.L.c. 269, §14. However, Grenga was indicted on two counts of violation of §14. It is not clear which two statements the Commonwealth believes were a threat under the statute. Because the court has determined that there was only one communication presented to the Grand Juiy that constituted a threat, only one count of violation of §14 is sustained by the evidence presented to the Grand Jury. The second count is therefore dismissed.
B. Free Speech
Although an indictment for violation of c. 269 is preliminarily permitted under the language of that statute, a subsequent free-speech analysis is mandated by the long-held constitutional maxim that “the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.” Grenga maintains that, while his communications were perhaps ill-advised, his right to make them was protected by the First Amendment and Article 16.
The types of conduct and statements that fall under state and federal constitutional protection and those that do not are well defined:
While most speech is protected from government regulation by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights, . . . there are certain well-defined and narrowly limited classes of speech that are not protected because they are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that whatever meager benefit that may be derived from them is clearly outweighed by the dangers they pose . . .
O'Brien v. Borowski, 461 Mass. 415, 422 (2012) (internal quotations and citations omitted). One such category of unprotected speech is “true threats.” Id. at 423.
‘True threats” encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals . . . The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur.
Id., quoting Virginia v. Black, 538 U.S. 343, 359-60 (2003). Intimidation is a form of true threat “where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.” Id. at 360.
*97 An indictment under c. 269 does not require evidence that the recipients of the threat did, in-fact, experience fear or apprehension that Grenga would follow through or act on his threats, although some evidence of grave concern on the part of Grenga’s fellow students was presented to the Grand Jury.[5] Rather, a grand jury only needed to assess whether it would have been reasonable for the recipients of Grenga’s threats to fear that Grenga had the intention and the ability to carry out the threat, irrespective of whether Grenga himself possessed the intent or ability to cany it out. Commonwealth v. Milo, 433 Mass. 149, 152 (2001). See also Commonwealth v. Corcoran, 252 Mass. 465, 483 (1925) (“d]t is not necessary, to constitute the crime, that the person who is threatened shall, in fact, be intimidated, provided the threats are such as are calculated to intimidate or put fear in an ordinary and prudent man”). Grenga’s actions must “be interpreted in the context of the actions and demeanor which accompanied them; when viewed together they may constitute expression” of intent to cause fear or carry out the threat. Commonwealth v. Elliffe, 47 Mass.App.Ct. 580, 582 (1999).
Grenga’s drawing of a stick figure wearing a bomb vest was a “true threat.” He wrote the word “soon” under his drawing, implying that, sometime soon, he would come to the school wearing a bomb vest. This written statement, combined with Grenga’s question to his teacher, as well as his later statements to other students on Facebook, demonstrate a consistent commitment to follow through with the depiction in his drawing on the chalkboard. Evidence was also presented that Grenga had shown up to school with an upside down cross cut into his forehead. Grenga’s friends told Lt. Gilmore that Grenga had been drinking and doing drugs. While Grenga’s appearance and substance abuse alone do not demonstrate intent to intimidate the school’s patrons, when combined with the other expressions, they further evince both Grenga’s intent to put fear into others and the reasonableness of fear an ordinary person might experience.
Grenga compares his indictment under c. 269 with an indictment under the same law that was dismissed by this court in Commonwealth v. Zapelli, 32 Mass. L. Rptr. 136 (Mass.Super. 2014). The defendant in Zapelli posted a video to the internet that he made containing special effects. The video depicted a building exploding. People who worked in the building depicted saw the video online and were very disturbed. This court found it critical that Zapelli posted the video online and did not send it directly to the employees of the building depicted in the video. The fact that the video did not contain any accompanying threatening language was also persuasive in favor of dismissal. The court found no evidence that the defendant intended to create fear that he would, in fact, bomb the building depicted in the video.
Here, Grenga’s picture was accompanied by the word “soon” and given context by his other expressions. The threat was made in the school, directly to persons who work and attend the school on a day-today basis. The court finds these facts, which are distinct from those in Zapelli determinative here.
Grenga’s threat to the students and faculty of the school was a “true threat.” The First Amendment of the United States Constitution and Article 16 of the Massachusetts Declaration of Rights did not protect Grenga’s right to make that threat. His indictment for one count ofviolation of G.L.c. 269, §14 must therefore stand.
ORDER
For the foregoing reasons, Grenga’s motion to dismiss the indictment against him is DENIED as to Count 1, but consistent with the above discussion, Count 2 in the indictment charging Grenga with violation of G.L.c. 269, §14, will be dismissed.

 Following Grenga’s threats, the Blackstone Police Department obtained a warrant to search the content of Grenga’s personal computer.

 This is relevant because one of Grenga’s attacks on the sufficiency of the evidence before the Grand Jury is that the evidence demonstrated that Grenga’s classmates erased the drawing and the word “soon” from the chalkboard before Grenga’s teacher could see it. This, Grenga asserts, means that the supposed threat was never actually communicated to Grenga’s teacher. However, under c. 269, §14, threats do hot need to have intended targets Even if Grenga intended that his teacher be the target of his threat, it is enough that he communicated a threat to have present or use an explosive device at the school to another person, i. e., the other students in the classroom who erased the drawing.

 The Supreme Judicial Court made clear in Kerns that the language of c. 269 does not require an intended target or any apprehension on the part of that target that the threat could or would be carried out It contrasted c. 269 with the Massachusetts threat statute, G.L.c. 275, §2, which makes it a criminal offense to “threaten to commit a crime against the person or property of another.”
By legislative design, . . . conviction under G.L.c. 275, §2, requires proof that the threat was made in circumstances which, viewed objectively, could have caused the intended victim to fear that the defendant had both the intention and ability to carry out the threat. The language of G.L.c. 269, §14(b), on the other hand, evinces a legislative intent that conviction require only that a threat was communicated to use, or have present, certain weapons, devices, or items at a place or location, whether or not the same is in fact used or present . . . Put simply, G.L.c. 275, §2, protects particular people and their possessions; G.L.c. 269, § 14(b) protects places or locations and ultimately, the public.
449 Mass, at 654-55.

 Absent Grenga’s invocation of the Massachusetts and United States Constitutions, the court would not consider the extent to which the recipients of Grenga’s threats were reasonably fearful that Grenga would follow through with his threat. In a case the court decides together with the present action, Commonwealth v. Forts, WOCR2015-00037 (Mass.Super. November 6, 2015) (Kenton-Walker, J.), the defendant made no argument that the statements he made to professors and campus officers at his school were protected under free speech constitutional provisions. It was therefore *98 unnecessary to consider whether his threats reasonably elicited fear because c. 269, §14, only requires a communicated threat', not a particular reaction to that threat.

 Lt. Gilmore spoke of the students’ reaction to the drawing in his testimony before the Grand Jury:
Q. [How] many witnesses were there to [the chalkboard] event?

A. Again, it was the entire class. I don’t believe the teacher had seen that because it concerned at least a handful of students so much so that they immediately, after seeing it, went up and erased it.