A grand jury returned twenty-six indictments against Nicholas Akerberg. The first nine indictments allege attacks on a neighbor and police officers on April 28 and 29, 2024 and are not at issue in this motion. The remaining indictments , numbers ten through twenty-six , involve events alleged to have taken place on April 14, 2025, at the Woburn District Court. Defendant has moved to dismiss Indictment -026, which charges him with communicating a bomb threat or chemical attack at a particular location that causes serious public alarm, in violation of G. L. c. 269, §14(c).1 See Commonwealth v. McCarthy , 385 Mass. 160 , 163-164 (1982).
            I held a non-evidentiary hearing and heard argument by counsel. After review of the grand jury minutes, consideration of the argument of counsel, and for the reasons stated below ,
the defendant's Motion to Dismiss is ALLOWED.
BACKGROUND
            The Commonwealth introduced evidence through multiple witnesses and exhibits. The following recitation of the facts "is drawn from the evidence before the grand jury , read in the light most favorable to the Commonwealth." See Commonwealth v. Johnson, 92 Mass. App. Ct.
 
--------------------------------------------
 
[1] The remaining fifteen indictments relating to Defend ant ' s alleged actions at the Woburn District court include six indictments for assault and battery by means of a dangerous weapon (pepper spray) , seven indictments for assault and battery on  a  police  officer/public employee  ,  disruption  of  court  proceedings, and use of teargas in the commission of a crime .
 
                                                            -1-
 
538, 540 n.4 (2017), rev. denied sub nom. Commonwealth v. Williams, 479 Mass. 1102 (2018), citing Commonwealth v. Lopez, 80 Mass. App. Ct. 390, 391 (2011).
            Mr. Akerberg was scheduled to appear at Woburn District Court on April 14, 2025. Before he arrived, Akerberg' s attorney alerted Assistant Chief Court Officer Diane Dugan that Defendant's mother had contacted him and warned  him  that  Akerberg  was "acting  weird" and was dressed in a jacket and tactical clothing.  Dugan  questioned  what  Akerberg's  mother  meant by " weird" because Akerberg , who was known to her, never spoke and always wore a jacket and tactical pants.
            Akerberg came to court wearing black tactical pants, a black  jacket,  boots, gloves,  a ballistic helmet and a gas mask. Dugan was in the front lobby waiting for him  and  was assisting with security screening. At some point, someone called out, "there he is! " and Dugan looked  out the front windows and saw a person who she believed to be Akerberg walking towards the courthouse. Dugan believes that it was Ackerberg ' s attorney who called  out,  but  she  was  not sure. Dugan walked from behind the metal detector towards the front door to intercept him. She testified that she intended to lock  the front  door to prevent  him from  entering. The door can only be locked from the outside. Dugan walked purposefully towards the front door but did not appear to be in a rush or panicked. As she opened the front door, Ackerberg sprinted the last few steps - towards the courthouse and deployed pepper-spray in her face. Ackerberg pushed past her into the building and Dugan ran after him. He was taken to the ground by multiple officers. During the strugg le, Akerberg deployed pepper spray again. Once restrained, he was found to be in possession of multiple canisters of pepper spray and a smoke grenade. The courthouse was evacuated and remained closed for several hours.
 
                                                            -2-
 
            A photograph of the pepper spray cannisters showed that they looked like aerosol cannisters and would not be immediately recognizable as weapons.
DISCUSSION
            The Massachusetts grand jury stands between the government and the individual to guard against " hasty, malicious and oppressive public prosecutions." Jones v. Robbins , 74 Mass. 329, 343-344 (1857). Because its essential functions are to investigate and charge, it is not the purpose of the grand jury to determine the guilt or innocence of the accused or even to test the adequacy of the evidence to sustain a finding of guilt. See Commonwealth v. Moran, 453 Mass. 880, 883-884 (2009); Commonwealth v. Goldstein, 54 Mass. App. Ct. 863, 866-867 (2002).
            "T he question posed by a McCarthy motion is whether the grand jury were presented with ' sufficient evidence to establish the identity of the accused and probable cause to arrest him."' Johnson, 92 Mass. App. Ct. at 541-542 , quoting Commonwealth v. Bell, 83 Mass. App. Ct. 61, 63 (2013). Probable cause requires "reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the defendant had committed ... an offense." Bell , 83 Mass. App. Ct. at 63 (citation and quotation omitted). " All that is required is ' reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed ... an offense." ' Id., quoting O'Dell, 392 Mass.445, 450 (1983). "Probable cause to sustain an indictment is a decidedly low standard." Commonwealth v. Fernandes, 483 Mass. 1, 20 (2019) (Cypher, J., concurring in part and dissenting in part) (citation and internal quotations omitted). "When testing the sufficiency of the evidence to sustain a grand jury indictment (courts] need not determine that the evidence would allow a reasonable person to find [the defendant guilty] beyond a reasonable doubt." Commonwealth v. Riley , 73 Mass. App. Ct. 721, 726-727 (2009), quoting Commonwealth v. Levesque, 436 Mass. 443, 452 (2002). Rather,
 
                                                            -3-
 
the "quantum  of evidence  required  to indict ...  [is] considerably  less exacting than that required of the petitjury that adjudicates guilt." Id. at 726.
            In this case, Akerberg is charged with violating G. L. c. 269, § 14(c). To support this indictment, there must be probable cause that (1) the defendant willfully communicated , or caused to be communicated , a threat (2) to use or have present (3) one of an enumerated list of dangerous devices, substances , or items[2] capable of causing death, serious bodily injury, or substantial property damage (4) at a place or location and (5) the communicated threat caused serious public inconvenience , alarm, dis ruption , or evacuation. Commonwealth v. Kerns, 449 Mass. 641, 651-52 (2007). Akerberg asserts that there was insufficient evidence before the grand jury to find probable cause that he "willfully communicated, or caused to be communicated, a threat" to use a chemical agent in the courthouse. The Commonwealth counters that Akerberg's act of approaching the courthouse wearing all black clothing, tactical gear, a gas mask and a military-style helmet effectively was a willful communication of such a threat.
            The word "threat" is not defined by statue but through case law it has been described as "an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension." Commonwealth v. Milo M, 433 Mass. 149, 151 (2001); see G.L. c. 275, § 2. A threat does not need to be oral or in writing. Drawings, symbols, property damage, and menacing acts can qualify as threats. See, e.g., Milo M , 433 Mass. at 154 (juvenile's drawings of a stick figure labeled with his name pointing a gun at another figure labeled with his teacher's name). See also State v. Murphy , 545 N.W.2d 909, 915 (Minn. 1996) (dead animal parts, fake bombs, slashed tires, and rocks thrown through windows); State v.
 
--------------------------------------------
 
[2] The enumerated list dangerous dev ices , substances or items is found in G. L. c. 269, § 14(b)(I): firearm , explosive or incendiary dev ice , dangerous chemical or biological agent, poison, harmful radioactive substance or any other dev ice , substance or item capable of causing death , serious bodily injury, or substantial property damage.
 
                                                            -4-
 
Miller , 6 Kan. App. 2d 432, 436 (1981) (burning a cross on the property of another); Commonwealth v. Kline, 201 A.3d 1288 (Penn. Super. 2019) (fingers held in the shape of a gun making a firing gesture).
            "[C]ommunication is a critical element of the threat in the sense that it must be uttered, not idly . ... " Commonwealth v. Hokanson, 74 Mass. App. Ct. 403, 406 (2009). See Kerns , 449 Mass. at 643 ("[T]he communication element of G. L. c. 269, § 14(b), may be proved by evidence that the threat was communicated to any person (other than a coconspirator or coventurer), and the communication need not be made to an intended target or potential victim."). In Milo M, the juvenile made two stick figure drawings depicting him shooting his teacher. Both were considered threats but only one was communicated. The communication of a threat occurred when the juvenile handed one of his drawings to the teacher. The second drawing, although equally threatening in nature, was not willfully communicated because a third party saw the drawing , took it from the juvenile , and showed it to the teacher. Milo M , 433 Mass. at 154. See Kline, 201 A.3d at 1291 (defendant communicated threat by standing in front of victim's car and pointing a finger gun at her which he mimed firing). See Commonwealth v. Zapelli, 32 Mass. L. Rptr. 136, *4 (2014) (Lauriat, J.) (dismissing communication of a bomb threat indictment against former tenant of a building whose lease had not been renewed who had posted a video depicting that building blowing up).
            The Supreme Judicial Court has concluded that the Legislature's intent behind the enactment of G. L. c. 265, § 14, in 2002, one year after the September 11, 2001 terrorist attack, was to punish the communication of any threat that a deadly, dangerous , or destructive device, substance, or item will be used at a specified location. Kern, 449 Mass. at 441. The question here is whether the defendant's attire, including a military-style helmet and gas mask, constituted the
 
                                                            -5-
 
communication of a threat to use or have present a dangerous device or substance as he walked towards the courthouse . Attire can be a nonverbal factor that may be taken into account when evaluating whether a threat is being communicated. See Ede/in v. State, 319 A.3d 849 (Del. 2024) ("Alongside his note, Edelin further implicitly communicated his threat by wearing all black clothing and keeping a hand in his pocket to imply the presence of a weapon." ); State v. Williams, 218 N.J. 576, 593 (N.J. 2014) ("In determining whether a victim had an actual and reasonable belief that the defendant was armed with a dead ly weapon, the factfinder, in surveying the totality of the circumstances, must consider the defendant's words that convey the threat , his overall conduct, his dress, and any other relevant factors."). Examples of attire factoring heavily in the communication of a threat include a person dressed in a Nazi uniform standing in front of a synagogue or in a Ku Klu Klan robe at a polling station in a predominantly Black neighborhood.
            While probable cause is a low standard, the evidence presented does not support the indictment. Court Officer Dugan was understandably concerned when she saw Ackberg approaching the courthouse wearing a helmet and gas mask. She attempted to prevent him from entering the courthouse. However, what she and others saw prior to her being attacked does not constitute the willful communication of a threat to use a chemical substance capable of causing death, serious bodily injury, or substantial property damage . See Kerns, 449 Mass. at 643. If the court were to find probable cause that Ackerberg communicated a threat to use a dangerous substance based on his attire, the statute's required element of communication would be meaningless. I therefore conclude there was insufficient evidence for the grand jury to find probable cause for a violation of G. L. c. 269, § 14(c).
 
                                                            -6-
 
ORDER
For the foregoing reasons, the defendant' s motion to dismiss is ALLOWED .
/s/Keren E. Goldenberg
Justice of the Superior Court
March 4, 2026