## COMMONWEALTH *vs.* ROBIN FURST.

No. 00-P-1020.

Suffolk. April 3, 2001. - October 18, 2002.

Present: BECK, RAPOZA, & BERRY, JJ.

*Threatening. Evidence,* Threat.

Where the criminal defendant took a third person into her confidence and sought his help to kill the defendant's estranged husband, it could not reasonably be inferred that she intended the third person to inform the husband of her remarks, and therefore, the evidence was not sufficient to convict the defendant of threatening to commit a crime in violation of G. L. c. 275, § 2. [284-286]

COMPLAINT received and sworn to in the Boston Municipal Court Department on August 2, 1999.

The case was heard by *Mark Hart Summerville,* J.

*Eric W. Ruben* for the defendant.

*Alex G. Philipson,* Assistant District Attorney, for the Commonwealth.

RAPOZA, J. In this appeal we are asked to determine whether there was sufficient evidence to convict the defendant of threatening to commit a crime against her estranged husband. Having determined that this case implicates the principles expounded in *Commonwealth* v. *Meier, ante* 278 (2002), a case heard by the same panel of this court, we conclude that evidence of the defendant's intent to communicate her threats to the victim was lacking. Consequently, we reverse and set aside the conviction.

*Facts.* Robin and Jeffrey Furst married in January, 1998, and separated in October of that same year. Through Jeffrey, Robin became acquainted with one George Carson, who lived with the couple for several months after they married. Jeffrey had known Carson since 1991.

After the couple separated, Robin had approximately thirty conversations with Carson during the spring and summer of 1999, in which she expressed anger at Jeffrey and stated that she wanted "something bad" to happen to him. Carson testified that in one of the earliest conversations, Robin told him, "I'd like to see [Jeffrey] killed. I'd like to see him disappear." Later, in June, 1999, Robin asked Carson to "[t]ake care of [Jeffrey]," adding, "I'd like to see you take care of him. I'd like to have him disappear." In July, 1999, Robin and Carson met several times, and she repeated to Carson that she wanted Jeffrey "taken care of" and for him to "disappear." In sum, Carson testified, "she wanted him dead." Although she did not suggest how this might be accomplished, on one occasion she offered Carson money.[1] On another, she offered him sex if he were to kill Jeffrey.

In July, 1999, Carson informed Jeffrey about the substance of his conversations with Robin. Jeffrey testified that following these revelations, he was in a state of "shock and fear" and that he spoke with his attorney and a representative of the Boston police department. Robin never communicated her remarks directly to Jeffrey, nor did she tell Carson to relay them to him.

*Discussion.* Menacing words alone, even those that express a threat to commit a crime, do not constitute an offense under G. L. c. 275, § 2. For a statutory violation to occur, such words must first be communicated in some manner to the defendant's intended victim, directly or through an intermediary. See *Commonwealth* v. *Troy T.*, 54 Mass. App. Ct. 520, 525-526 (2002). But it is not enough that threatening words reach their target. "The Commonwealth must [also] prove, beyond a reasonable doubt, that the defendant intended that her threats be communicated to [the victim]." *Commonwealth* v. *Meier, supra* at 282. Thus, assuming that Robin's various statements to Carson that she wanted Jeffrey killed were "threats" within the mean-

---

[1] Apparently, Robin maintained that Jeffrey owed her $50,000, and told Carson that if he could get that back for her, she would give him a portion of the money. It is not clear from Carson's testimony that she intended the money to be payment for harming Jeffrey.

ing of G. L. c. 275, § 2,[2] they are not punishable under that statute unless, among other things, Robin also intended that Carson communicate them to Jeffrey.

In cases where a defendant utters a threat directly to her proposed victim, the defendant's intent to communicate the threat is apparent. But in circumstances where a threat is relayed to its ultimate recipient by a third party, the Commonwealth must prove, beyond a reasonable doubt, that the defendant intended that the threat be communicated through the intermediary. *Commonwealth* v. *Meier, supra* at 282. In such cases, the defendant's intent need not be express and may be proved by circumstantial evidence. *Id.* "Thus, when a defendant utters a threat to a third party who 'would likely communicate it to [the ultimate target],' . . . the defendant's act constitutes evidence of her intent to communicate the threat to the intended victim." *Id.*, quoting from *Commonwealth* v. *Troy T.,* 54 Mass. App. Ct. at 527.

Even when considered in the light most favorable to the Commonwealth, the evidence here does not support the conclusion that Robin intended Carson to relay her statements to Jeffrey. Where the defendant took Carson into her confidence and sought his help to kill her estranged husband, it cannot reasonably be inferred that she intended Carson to inform Jeffrey of her remarks. The defendant approached Carson as a potential partner in crime, and not as one who would likely communicate her statements to the intended victim. Because the Commonwealth failed to produce sufficient evidence to satisfy any rational trier of fact, beyond a reasonable doubt, that Carson's disclosures to Jeffrey were intended by the defendant, an

---

[2]Although the defendant was charged with threatening to commit a crime (the killing of her husband) in violation of G. L. c. 275, § 2, there is no indication in the record that she was charged with the more obvious offense, on these facts, of soliciting Carson to commit a crime. See *Commonwealth* v. *Barsell,* 424 Mass. 737, 738 (1997), quoting from *Commonwealth* v. *Flagg,* 135 Mass. 545, 549 (1883) ("The solicitation of 'another to commit a felony or other aggravated offence' is an 'indictable offence at common law' in Massachusetts"). Although we assume, for purposes of this opinion, that Robin's remarks to Carson were threats, we do not decide whether a solicitation to commit a crime per se constitutes a threat to commit the same offense.

essential element of the crime charged, the defendant's conviction cannot stand.

*Judgment reversed.*

*Finding set aside.*

*Judgment for defendant.*