## COMMONWEALTH *vs.* LATUNYA MAIDEN.

No. 03-P-496.

Suffolk. January 20, 2004. - July 1, 2004.

Present: ARMSTRONG, C.J., GREENBERG, & MILLS, JJ.

*Threatening. Practice, Criminal,* Instructions to jury.

Evidence at the trial of a criminal complaint for threatening assault in violation of G. L. c. 275, §§ 2-4, was sufficient to convict the defendant, where the jury were abundantly warranted in finding that the defendant intended the threat to be heard directly by the complainant or should reasonably have expected that it would be communicated to her, even if the complainant only heard the words when they were repeated to her by a person present who did in fact hear them, and where the jury could properly find that the words were intended to alarm the complainant. [434]

At the trial of a criminal complaint for threatening assault in violation of G. L. c. 275, §§ 2-4, the judge did not err by declining to instruct the jury in accordance with § 5.03 of the Model Jury Instructions for Use in the District Court (1995), where the actual receipt of the threat by the victim (an element included in the model instruction) could not fairly be said to be an element implicit in the traditional definition of that crime. [434-436]

COMPLAINT received and sworn to in the West Roxbury Division of the District Court Department on September 1, 2000.

The case was tried before *Mary Ann Driscoll*, J.

*Eleanor R. Hertzberg* for the defendant.

*Douglas E. Zemel*, Assistant District Attorney, for the Commonwealth.

ARMSTRONG, C.J. The defendant, the girlfriend of Richard Glover, was convicted under G. L. c. 275, §§ 2-4, of threatening to assault Glenda Hydes, Glover's former wife. The threat was uttered as they and others were leaving a courtroom following a hearing. Hydes had previously obtained a G. L. c. 209A restraining order for protection against Glover, and the court hearing was on a charge by Hydes that Glover had violated the order. At the end of the hearing, the defendant, angered at

Hydes, while facing Hydes at a distance of four feet, said, "I will kick your ass and I will get you for this." The words were not directly heard by Hydes, who was apparently preoccupied and failed to catch their import until police Detective Laura Howard, who was walking in front of the defendant, repeated them to Hydes.

1. *Sufficiency of the evidence.* The elements of the crime of making a threat have been traditionally stated as "an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat." *Commonwealth* v. *Milo M.*, 433 Mass. 149, 151 (2001), quoting from *Commonwealth* v. *Sholley*, 432 Mass. 721, 725 (2000). The definition has been explicated by decisions requiring evidence that the person making the threat either communicated it to the person targeted or intended that it be communicated to the person targeted so as to cause fear or apprehension in the victim. See *Commonwealth* v. *Troy T.*, 54 Mass. App. Ct. 520, 524-528 (2002); *Commonwealth* v. *Meier*, 56 Mass. App. Ct. 278, 281-282 (2002); *Commonwealth* v. *Furst*, 56 Mass. App. Ct. 283, 284-285 (2002). The evidence here abundantly warranted a finding that the defendant intended the threat to be heard directly by Hydes or, in any event, should reasonably have expected that it would be communicated to Hydes by Detective Howard. Moreover, the jury could properly find that the words were intended to alarm Hydes.

2. *Jury instructions.* In *Commonwealth* v. *Troy T.*, 54 Mass. App. Ct. at 525, we quoted the Model Jury Instructions for Use in the District Court § 5.03 (1995) ("the Commonwealth must prove three things beyond a reasonable doubt: *First*: That the defendant communicated to [*the alleged victim*] an intent to injure his [or her] person or property, now or in the future"). The defendant here asked that the judge use the model text in her instructions to the jury. The Commonwealth, concerned that the model jury instruction as written would mislead the jury to acquit the defendant if the jury should find that Hydes did not hear the threat directly from the defendant, but, rather, second-hand from Detective Howard, prevailed on the judge to instruct

the jury instead in the words of the traditional definition of "threat," as quoted above from the *Milo M.* and *Sholley* cases.[1]

The defendant's argument on appeal is that, by eliminating the "communication" phraseology of the model jury instruction, the judge omitted an element of the crime of making threats: namely, that the threat be actually received, whether directly or indirectly through another, by the target of the threat. Such an element cannot fairly be said to be implicit in the traditional definition, "an expression of intention to inflict a crime on another and an ability to do so in circumstances that *would* justify apprehension on the part of the recipient of the threat." *Commonwealth* v. *Milo M.*, *supra* (emphasis added). Under that definition, the crime would seem to be complete — i.e., all elements satisfied — upon utterance, whether or not the target of the threat hears (or reads) it.

It is clear from numerous decisions that the legal definition of a threat requires "communication" of the threat in the sense that it must be uttered, not idly, but to the target, to one who the defendant intends to pass it on to the target, or to one who the defendant should know will probably pass it on to the target. See, e.g., *Commonwealth* v. *Milo M.*, 433 Mass. at 151 n.2, 158 (contrast treatment of first and second drawings); *Commonwealth* v. *Troy T.*, 54 Mass. App. Ct. at 524-525 (defendant's threat, made among his friends, to gun down every second classroom of his fellow students, and his comment, "those dumb blondes . . . have to go too," alarmed a blonde female classmate who learned of it from one who had overheard the defendant talking with his friends; held, defendant not guilty of a threat where he had no reason to think his words would go beyond circle of friends); *Commonwealth* v. *Meier*, 56 Mass. App. Ct. at 282 (defendant liable for threat made to the victim's lawyer that she would shoot the victim, because evidence supported inference that defendant intended that the victim's lawyer would tell victim); *Commonwealth* v. *Furst*, 56 Mass. App. Ct. at 285 ("[w]here [the defendant] took Carson into her confidence and sought his help to kill her estranged husband,"

---

[1]The traditional definition was formulated in *Robinson* v. *Bradley*, 300 F. Supp. 665, 668 (D. Mass. 1969), and thereafter adopted in *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 816 (1973).

defendant held not to have made threat because "it cannot reasonably be inferred that she intended Carson to inform the estranged husband of her remarks").

There is no firm basis that we have found for concluding that transmission of the threat to the victim — i.e., actual receipt by the victim — is a necessary element of the crime of making a threat. It does not, as we have said, seem to be implicit in the traditional definition of the crime. Rather, the first formulation that seemed to make it a necessary part of the crime was the District Court model jury instruction discussed in *Commonwealth* v. *Troy T.*, *supra*. There, the instruction was illustrative of the assumption, implicit in the case law, that something said to be a threat can only be such if it is communicated. The case does not hold that the communication must actually be received by the victim. The problem in *Troy T.* was not that the threat was not received — there, as here, it plainly was — but whether the maker of the threat had any intention or reasonably should have expected that it would be passed on to the victim (and for that matter, whether it would be understood as a threat if it were passed on). Similarly, in *Commonwealth* v. *Furst*, *supra* at 284, it was not disputed that the victim had been told of the threat; the only question was whether there was sufficient evidence of the defendant's intent that Carson divulge the threat to the victim. That the defendant may be criminally responsible for making a threat that fails to reach its intended victim is shown by our decision in *Commonwealth* v. *Hughes*, 59 Mass. App. Ct. 280, 281-283 (2003). To similar effect, see *Drew* v. *State*, 256 Ga. App. 391, 393 (2002) (conviction for telephoned terroristic threat affirmed even if only police officer, not victim, heard threat); *Keyes* v. *Commonwealth*, 39 Va. App. 294, 301-302 (2002) (threat in letter intercepted by authorities screening prisoner mail). Moreover, the law seems to be settled that a threat need not cause actual fear or apprehension in the victim. The test is an objective one: whether the threat by its content in the circumstances was such as would cause the target of the threat to fear that the threatened crime or injury might be inflicted. *Commonwealth* v. *De Vincent*, 358 Mass. 592, 595 (1971). *Commonwealth* v. *Milo M.*, 433 Mass. at 151-152.

The evidence having been sufficient to support a verdict that

the defendant violated the threat statute, and the judge's instructions to the jury having been in accordance with the applicable law, the judgment must be affirmed.

*So ordered.*