## COMMONWEALTH *vs.* JOHN A. FEDERICO.

No. 06-P-868.

Worcester. April 4, 2007. - November 16, 2007.

Present: PERRETTA, SMITH, & MEADE, JJ.

*Disturbing the Peace. Enticement of Minor. Statute,* Construction. *Practice, Criminal,* Instructions to jury, Verdict.

Evidence at a criminal trial was sufficient to demonstrate that the defendant had engaged in conduct that disturbed the peace, in violation of G. L. c. 272, § 53. [714-715]

A criminal defendant failed to demonstrate that G. L. c. 265, § 26C, as inserted by St. 2002, c. 385, § 3, which prohibits the enticement of a child, was ambiguous, or that the trial judge erred in his instructions to the jury regarding the elements of enticement. [715-717]

The evidence at the trial of a criminal complaint charging enticement of a child, in violation of G. L. c. 265, § 26C, was more than sufficient to place the defendant at the scene of the crime on the dates in question. [717-718]

At a criminal trial, the judge did not err in allowing leading questions on direct examination of the victim, where the victim clearly gave his own testimony without undue suggestion from the questions put to him by the prosecutor. [718-719]

At the trial of a criminal complaint charging two counts of enticement of a child on two separate dates, no substantial risk of a miscarriage of justice arose from the judge's failure to give a specific unanimity instruction sua sponte, where the Commonwealth had presented evidence sufficient to withstand a motion for a required finding of not guilty on each of the charged offenses. [719-720]

COMPLAINT received and sworn to in the Milford Division of the District Court Department on November 3, 2003.

After transfer to the jury of six session of the Worcester Division of the District Court Department, the case was tried before *Vito A. Virzi,* J.

*Sarah E. Dolven* for the defendant.

*Meghan E. Hallock,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On appeal from judgments entered on a complaint charging two counts of enticement of a child under the age of sixteen years, G. L. c. 265, § 26C(*b*), and one count of disturbing the peace, G. L. c. 272, § 53, the defendant argues that the judgments on the enticement counts must be vacated. He claims that G. L. c. 265, § 26C(*b*), is ambiguous; that he was entitled to required findings of not guilty; and that various other errors occurred throughout his trial. He also argues that he was entitled to a required finding of not guilty on the count charging him with a breach of the peace.[1] We affirm the judgments.

1. *The facts.* Based upon the evidence presented at trial, the jury could have found the following facts. Late at night on Saturday, October 18, 2003, the victim, then fifteen years of age, was seated at a computer beside his bedroom window.

Sometime between 11:00 P.M. and midnight, the victim heard a male voice outside his window repeatedly whispering, "Suck my cock." The victim ran to his older brother, who was asleep on the living room couch. The brother took a quick look outside but saw no one. An almost identical incident occurred the same time the following night, October 19. The only difference was that on this occasion, the whisperer not only repeated his statement of the night before but also said, "Come out here. Suck my cock." Afraid, the victim again ran to his older brother. The two boys went outside to investigate but, again, found no one.

We need not repeat the details of the events occurring the following weekend, October 25 and 26, as they are of marginal relevance to the issues before us. It is enough to state that on each of these dates, the victim and his brother spotted a trespasser on their family's property between the hours of 11:00 P.M. and midnight, one night in the driveway and the other night in front of the house by the victim's bedroom window.

While working on his computer at about 1:00 A.M. on November 2, 2003, the victim heard the same male voice from outside his window repeatedly saying, "Come outside" and "Suck my cock." As on the prior occasions, the victim and his brother went outside to investigate. They saw lights, triggered

---

[1] At the close of the Commonwealth's case, the judge granted the defendant's motion for a required finding of not guilty on the charge of disorderly conduct brought under G. L. c. 272, § 53.

by motion sensors, illuminating the backyards of neighboring houses, first from the abutting property on the side of the house closest to the driveway, and then from the next property as one moves away from the victim's house. When the backyard of the house three doors down remained dark, the victim's brother yelled in an attempt to startle whomever might be in the yard. Moments later they heard a noise that sounded like someone jumping over their neighbor's chain link fence.

Later that day, the victim's father devised a plan to catch the trespasser. On the night of November 2, the victim sat at his computer to serve as "bait," while the father and older brother hid in a pickup truck parked in the driveway close to the corner of their house. At about 11:45 P.M., the father and older brother saw the defendant walking up the middle of the street toward their house. He passed by the length of their front yard, entered the side yard to the right of the driveway, and walked along the grassy area between their house and that of a neighbor until he was roughly parallel with the back of the victim's house. He then crossed the driveway and, with his back against the exterior wall of the house, sidestepped his way along the side of the house and around the corner to the front, all the while looking up at a motion sensor as he passed beneath it, and made his way to the victim's bedroom window.

At the same time that the victim was hearing a rustling of the bush outside his window and a male voice saying, "Suck my cock," the father and older brother leapt from the truck. The defendant fled across the driveway toward the neighbor's back yard with the father and brother chasing, the brother in the lead and the father yelling, "[T]ackle him."[2] The brother tackled and pinned the defendant to the ground in a neighbor's back yard, and the father "sat" on him.[3] While pinned to the ground, the defendant struggled to cover his face with his hands and flip

[2]There was testimony to the effect that the father and older brother were yelling threats and profanities at the defendant as they chased him and while he was restrained on the ground. It also appears that although the father was carrying a baseball bat during the pursuit, he never used or attempted to use it to inflict a blow on the defendant.

[3]The father was approximately six feet in height and, at the time of the events in issue, weighed 320 pounds, while the defendant was about five feet, seven inches tall and was of a "slight" build.

over onto his stomach. All the while, the father repeatedly demanded to know who he was and why he was under his son's window. The defendant refused to respond to the father's questions except to deny that he had been under the victim's window, insisting that he had seen someone else on the property and asking that the police be summoned. By this time, the victim had arrived on the scene and used his father's cellular telephone, as instructed by his father, to summon the police.

The officer responding to the scene began to question the father, the older brother, the victim, and the defendant for purposes of assessing the situation. While conducting these interviews, the defendant was "getting a bit belligerent, that he hadn't done anything . . . and couldn't understand why [the victim's family] chased him down." The officer instructed the defendant several times to "calm down." Upon observing that neighbors were peering out their windows and watching from the sidewalk, the officer determined that the scene before him was "not the place to discuss the matter." He arrested the defendant for being a disorderly person, but see note 1, *supra*, and a disturber of the peace.

2. *Discussion.* We begin our discussion of the defendant's claim that he was entitled to a directed verdict on the charge of disturbing the peace and then proceed to consideration of his arguments concerning his convictions pursuant to the enticement statute.

a. *Disturbing the peace.* As used in G. L. c. 272, § 53, as amended by St. 1943, c. 377, the phrase "disturbers of the peace" is construed in accordance with the common-law definition of the offense, making it a crime "to disturb the peace of the public, or some segment of the public, by actions, conduct or utterances, the combination of which constitute[s] a common nuisance." *Commonwealth* v. *Jarrett*, 359 Mass. 491, 493 (1971). The defendant argues that the Commonwealth failed to sustain its burden of proof on this count of the complaint, that it failed to show that the defendant intentionally engaged in "activities [that] most people would find to be unreasonably disruptive," and that such conduct "did in fact infringe someone's right to be undisturbed." *Commonwealth* v. *Orlando*, 371 Mass. 732, 735 (1977). See *Commonwealth* v. *Twombly*, 50 Mass. App. Ct. 667, 670 (2001). Time and place are factors to be considered in

determining whether activities are "unreasonably disruptive." *Commonwealth* v. *Orlando*, 371 Mass. at 735.[4]

Although there is no direct evidence to show whether the neighbors took to their windows and gathered on the sidewalk during the chase or upon the arrival of the police, we do not think that common sense should give way to precision timing. Rather, we think it reasonable to infer that it was the defendant who awakened the neighbors and disturbed their peace by once again tripping the motion sensors and ignoring the pursuers' predictable reaction of ordering him to stop. It is on this basis that we conclude that the evidence was sufficient to show conduct falling within the purview of G. L. c. 272, § 53.[5]

b. *Enticing a child.* As to the counts brought under G. L. c. 265, § 26C, as inserted by St. 2002, c. 385, § 3, the defendant makes numerous arguments, the first of which is that the statute is ambiguous. As here pertinent, it reads:

> "(*a*) As used in this section, the term 'entice' shall mean to lure, induce, persuade, tempt, incite, solicit, coax or invite.

> "(*b*) Any one who entices a child under the age of 16, or someone he believes to be a child under the age of 16, . . . to exit . . . any . . . dwelling . . . with the intent that *he or another person* will violate section . . . 13H [or] 23 . . . of chapter 265 . . . shall be punished . . ." (emphasis added).[6]

---

[4]It appears from the record before us that although the defendant moved for a required finding of not guilty on all counts of the complaint at the close of the Commonwealth's case, he did not renew his motion as to any of the counts at the close of all the evidence. We nonetheless consider his argument. See *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986) ("findings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice").

[5]In reaching this conclusion, we have rejected the Commonwealth's contention that the defendant's conviction on this count can be sustained on the basis of his conduct at the time of his arrest. While the arresting officer testified that the defendant was becoming a "bit belligerent" and insistent in his denials of any wrongdoing during his questioning, the officer did not describe the defendant's conduct as disruptive, violent, or threatening. Nor did the officer testify to any facts indicative of an attempt by the defendant to resist arrest.

[6]Although G. L. c. 265, § 26C(*b*), enumerates many statutes, the two at issue in the present case are §§ 13H and 23 of c. 265.

In challenging the judgments entered against him on the two counts brought under § 26(C)(*b*), the defendant makes numerous arguments, the first of which is that the statute is ambiguous in that the word "he" could be read as referring to either the child under sixteen years of age (that is, the victim) or the defendant. Based on this argument, the defendant asserts that he is entitled to the "benefit of the ambiguity." *Commonwealth* v. *Carrion*, 431 Mass. 44, 45-46 (2000), quoting from *Commonwealth* v. *Roucoulet*, 413 Mass. 647, 652 (1992) ("If . . . statutory language can plausibly be found to be ambiguous, the rule of lenity requires the defendant be given the benefit of the ambiguity").

As support for his reading of the statute, the defendant points to Massachusetts Superior Court Criminal Practice Jury Instructions § 2.29A (Mass. Cont. Legal Educ. 1999 & Supp. 2003).[7] However, as cautioned in the forward of that volume,

> "the production of these pattern instructions does not mean that judges must follow them slavishly. They may be appropriate as written in some trials; they may need to be modified in other cases."

Massachusetts Superior Court Criminal Practice Jury Instructions, *supra* at iii.

The judge instructed the jury that in order to find the defendant guilty on the enticement counts of the complaint, they would have to find that

> "the defendant committed the offense with the intent that the *defendant* or some other person would violate one of the . . . offenses which I just referred to, which is rape and abuse of a child, or indecent assault and battery on a person 14 years of age or older" (emphasis added).

Assuming without concluding that the defendant's reading of

---

[7]Massachusetts Superior Court Criminal Practice Jury Instructions § 2.29A, *supra* at 2-248.2, describes the third element of G. L. c. 265, § 26C, as follows:

> "that the defendant committed the offense with the intent that the alleged victim or another person would violate [one or more of the listed offenses] or any offense that has as an element the use or attempted use of force" (footnote omitted).

the statute is plausible in certain circumstances, such circumstances do not exist in the present case. The evidence at trial supports the judgments under either our or the defendant's reading of the statute. That is to say, even were we to construe the statute as the defendant suggests, that the word "he" refers to the victim, the evidence in the present case is that the victim was enticed to exit his home with the intent that he or the defendant, the only other person involved in the events in issue, violate one or more of the enumerated offenses. Simply put, in the circumstances of this case the reference to "another person" could be to no one other than the defendant.[8] That being so, we see no error in the judge's jury instruction. See note 7, *supra.*

We decline to decide for all circumstances an issue that is irrelevant to the outcome of this appeal. It is enough to say that in the present case, the defendant's reading of the statute avails him of nothing.

Notwithstanding our conclusion on the defendant's claim of an ambiguity in G. L. c. 265, § 26C(*b*), we go on to consider his argument that the evidence under either reading of that section of the statute was insufficient to place him at the scene of the crime on October 18, October 19, and November 2, 2003. See note 4, *supra.* His argument fails as to all three dates.

At trial, the victim's father and older brother identified the defendant as the individual they saw outside the victim's bedroom window, chased, and captured. The victim testified that the voice he heard on the night of November 2 was the same voice he had heard on October 18 and 19, and that he recognized the voice of the man captured by his father and older brother as the same voice he had heard outside his window on the nights in question. Moreover, there was evidence to show that the individual apprehended on November 2 had appeared outside the victim's window on October 18 and 19 at approximately the same time as on November 2. He also uttered the same message

---

[8]The defendant contends that because of the alleged ambiguity in the statute, "the theory of intent upon which the jury convicted [him] was unclear." We do not think that it can be said that the jury failed to follow the judge's instructions on the issue of intent and, instead, applied the wrong theory of guilt to the facts of this case under either reading of the statute. See *Commonwealth* v. *Kirwan*, 448 Mass. 304, 315 (2007); *Commonwealth* v. *Campbell*, 69 Mass. App. Ct. 212, 217 (2007).

as that heard by the victim on October 18 and 19. There is also the testimony of the father and brother with respect to the circuitous route the defendant took from the street to the victim's window on November 2, during which he looked up at the motion sensor as he passed beneath it.

We think this evidence, taken in the light most favorable to the Commonwealth, more than sufficient to give rise to the reasonable inference that the man outside the victim's window on November 2, who acted with an awareness of the motion sensor and whose activities were identical to those occurring on October 18 and 19, was the same person, the defendant, on all three dates.

It is also the claim of the defendant that but for evidence elicited through leading questions, the evidence would have been insufficient to support the verdicts. As best we can discern from the defendant's brief, his argument is as follows. The victim testified that on two occasions, the night of October 19 and the morning of November 2, an individual stood outside his window and told him to "come out here" or "come outside" and "suck my cock." The direct examination of the victim to which the defendant takes issue was directed to the events of October 19 and was as follows:

*Q.* "And other than the person saying these words over and over again, Suck my cock, did the person ever ask you to go anywhere?"

*A.* "He told me to go outside."

*Q.* "And do you remember what exactly the words were that they used, to the best of your memory?"

*A.* "Come out here. Suck my cock."

Assuming without deciding that these questions somehow suggested the answers to the victim, we fail to see any error, let alone reversible error, in the judge's ruling on the defendant's objections. It is all too well established that a judge may in his or her discretion allow leading questions during direct examination. See *Commonwealth* v. *Blondin*, 324 Mass. 564, 573

(1949), cert. denied, 339 U.S. 984 (1950). In the present case, the transcript gives clear indication that the victim gave his own testimony without undue suggestion from the questions put to him by the prosecutor. Moreover, a police officer testified that the victim gave a written statement to the police on November 3 in which the victim reported that the person standing outside his window on October 19 repeatedly said, "Come outside here and suck my cock." The defendant has failed on this claim to show either an abuse of discretion or error requiring reversal of his conviction.

The defendant's final argument on the two enticement counts of the complaint based on the events of October 19 and November 2 is that the judge's failure to give a specific unanimity instruction was prejudicial error. As the defendant took no objection to the jury instructions, we consider whether the error, if any, in the instructions gave rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967); *Commonwealth* v. *Comtois*, 399 Mass. 668, 676 (1987).

As explained in *Commonwealth* v. *Keevan*, 400 Mass. 557, 566-567 (1987):

> "A general unanimity instruction informs the jury that the verdict must be unanimous, whereas a specific unanimity instruction indicates to the jury that they must be unanimous as to which specific act constitutes the offense charged."

Generally speaking, a specific unanimity instruction is appropriate where there is "evidence of alternate incidents that could support the charge against the defendant." *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 442, cert. denied, 519 U.S. 1015 (1996). A specific unanimity instruction is required if properly requested and if warranted by the evidence. See *Commonwealth* v. *Comtois*, 399 Mass. at 676 n.11; *Commonwealth* v. *Lewis*, 48 Mass. App. Ct. 343, 350 (1999). Compare *Commonwealth* v. *Conefrey*, 420 Mass. 508, 514-516 (1995).

It is, however, well established that a judge's failure to give a specific unanimity instruction sua sponte does not automatically give rise to a substantial risk of a miscarriage of justice where, as here, the Commonwealth presented evidence sufficient to

withstand a motion for a required finding of not guilty on each of the charged offenses. See *Commonwealth* v. *Comtois*, 399 Mass. at 676-677; *Commonwealth* v. *Lemar*, 22 Mass. App. Ct. 170, 173 (1986); *Commonwealth* v. *Lewis*, 48 Mass. App. Ct. at 349-350. Based on these authorities, we capsulize what we already have said and described at length.

The evidence presented by the Commonwealth was sufficient to warrant a jury in finding beyond a reasonable doubt that the defendant, on two separate occasions, had solicited a boy fifteen years of age to leave his home for the purpose of performing fellatio. The jury were instructed that their verdict had to be unanimous as to each of the two counts. The victim's testimony clearly identified the relevant dates and what occurred during each discrete incident. The acts constituting the alleged criminal conduct were nearly identical on each occasion described by the victim. Both the victim and the defendant testified at trial, where the critical issue was the credibility of the victim. As established by the verdicts, the jury accepted the credibility of the victim.

Based on these facts as established on the record before us, we conclude that any error in the judge's instructions to the jury fell far short of giving rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Comtois*, 399 Mass. at 676-677; *Commonwealth* v. *Lemar*, 22 Mass. App. Ct. at 173; *Commonwealth* v. *Lewis*, 48 Mass. App. Ct. at 349-350.

3. *Conclusion.* It follows from all that we have said that the judgments entered against the defendant are affirmed.

*Judgments affirmed.*