COMMONWEALTH *vs.* STEPHEN M. HOKANSON.

No. 08-P-393.

Worcester. February 10, 2009. - June 11, 2009.

Present: GREEN, BROWN, & VUONO, JJ.

*Disturbing the Peace. Threatening. Evidence,* Threat.

At a criminal trial, the evidence was sufficient to support a conviction of
   disturbing the peace, where the fact finder could reasonably have inferred
   that the average bystander would have found the defendant's conduct at the
   time of his arrest — flailing and shouting outside a police station — unreason-
   ably disruptive. [405-406]

At the trial of a criminal complaint charging the defendant with threatening to
   commit a crime, the evidence was sufficient to support a conclusion that the
   defendant's conduct evidenced an intent to communicate his threat through
   an intermediary, in that the defendant would have no expectation of silence
   on the part of a stranger who saw the defendant point his finger at a group
   of police officers in a police station and pantomime the killing of those offi-
   cers while uttering the words of his threat. [406-408]

COMPLAINT received and sworn to in the Worcester Division of
the District Court Department on April 30, 2007.

The case was heard by *Paul F. LoConto,* J.

*Richard S. Jacobs* for the defendant.

*Donna-Marie Haran,* Assistant District Attorney, for the
Commonwealth.

BROWN, J. After a jury-waived trial in the District Court, the
defendant appeals from his convictions of disturbing the peace,
G. L. c. 272, § 53, and threatening to commit a crime, G. L.
c. 275, § 2. At the close of the Commonwealth's case, the defend-
ant moved for a required finding of not guilty, but only as to the
charge of threatening to commit a crime. He challenges the suf-
ficiency of the evidence of both convictions.[1] We affirm.

---

[1] The defendant's failure to move for a required finding of not guilty on the
second count does not limit our review, as "findings based on legally insuf-
ficient evidence are inherently serious enough to create a substantial risk of a

1. *Facts.* We rehearse the facts in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979), omitting some details that will be addressed in our analysis below. On April 27, 2007, Paul Emmett was seated in the lobby of the Worcester police station when the defendant, Stephen M. Hokanson, entered. It was about 2:45 P.M. The defendant sat next to Emmett. Emmett testified that the defendant then made reference to things having been different "when so-and-so was police chief . . . it wasn't like this."[2] At this time the defendant lowered his voice and began talking about the poor shooting skills of the officers, to which he could personally attest, having "shot with them." He later repeated these comments while standing. Emmett described the defendant's demeanor at this time as "pretty volcanic," and "terribly upset, terribly angry about something." The defendant then sat down, leaned over, gesturing by pointing a simulated "trigger-finger," and whispered to Emmett: "The next time I come in here, boom, boom, boom, boom. Every fuckin' one of them. Nobody will be standing."

Emmett then proceeded to try to get the police officers' attention without alerting the defendant. The defendant then stated, "Now, that guy in Texas, he was a good shot. It's a shame what he did, but he was a good shot."[3] Emmett then got up to try to get the attention of an officer, but was unable to do so. He left the lobby in search of a police officer, but instead encountered some sort of "delivery guy." Just then, the defendant walked past Emmett with a cigarette in his mouth and left the building. Emmett testified that "at that moment [I decided] to just grab the first person I could and tell them, 'That guy just threatened to shoot a bunch of you officers.' " And he did in fact do that. The response was swift; several officers went outside and surrounded and pat frisked the defendant, fearing he was armed. The defendant, not wanting to be pat frisked, was uncooperative, and began

miscarriage of justice." *Commonwealth* v. *McGovern,* 397 Mass. 863, 867-868 (1986).

[2]Emmett testified that he thought the defendant apparently was referring to the police officers conducting a vote in the background.

[3]Emmett testified that he believed the defendant was referring to the Virginia Polytechnical Institute and State University shootings that had taken place eleven days earlier on April 16, 2007.

"flailing" and "shouting." An indeterminate number of people gathered around to see "what was going on." At trial, Officer Ronald Remillard, one of the responding officers, testified that the people were "alarmed." Remillard then arrested the defendant.

2. *Disturbing the peace.* The defendant contends that the Commonwealth presented insufficient evidence to support a conviction of disturbing the peace. "As used in G. L. c. 272, § 53, as amended by St. 1943, c. 377, the phrase 'disturbers of the peace' is construed in accordance with the common-law definition of the offense, making it a crime 'to disturb the peace of the public, or some segment of the public, by actions, conduct or utterances, the combination of which constitute[s] a common nuisance.' *Commonwealth* v. *Jarrett,* 359 Mass. 491, 493 (1971)." *Commonwealth* v. *Federico,* 70 Mass. App. Ct. 711, 714 (2007). A two-part test is used to determine whether a defendant's conduct constitutes disturbing the peace. *Commonwealth* v. *Orlando,* 371 Mass. 732, 734-735 (1977). "It proscribes activities which, first, most people would find to be unreasonably disruptive, and second, did in fact infringe someone's right to be undisturbed. The first prong is normative and protects potential defendants from prosecutions based on individual sensitivities. The second prong requires that the crime have a victim, and thus subjects potential defendants to criminal prosecution only when their activities have detrimental impact." *Ibid.* "Time and place are factors to be considered in determining whether activities are 'unreasonably disruptive.' " *Commonwealth* v. *Federico, supra* at 714-715, quoting from *Commonwealth* v. *Orlando, supra* at 735.

Under this two-part test, the defendant's actions constituted a disturbance of the peace. After confronting the defendant, Officer Ronald Remillard testified that the defendant was "shouting," "flailing," "agitated," and "uncooperative." In addition, Remillard testified that there was heavy foot traffic in the area and that a group of people who appeared "alarmed" began to gather. Thus, the fact finder could reasonably have inferred that the average bystander would have found the defendant's conduct at the time of his arrest[4] — "flailing" and "shouting" outside

---

[4]The defendant's attempt to draw a parallel between a footnote in *Federico* and the instant case misses the mark. See *Commonwealth* v. *Federico, supra* at 715 n.5. Although this court affirmed Federico's conviction of disturbing

of a police station — "unreasonably disruptive," as evidenced by the bystanders' alarm. See *Federico, supra* at 715.

3. *Threatening to commit a crime.* The defendant contends that his words and actions did not constitute a threat because he did not intend for his words to be communicated by Emmett. Put another way, the defendant asserts that absent evidence demonstrating his express purpose to have a third party communicate his words, he should not have been convicted. We disagree.[5]

A threat, although undefined in the statute, has been formulated in the case law to mean "an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat." *Commonwealth* v. *Maiden*, 61 Mass. App. Ct. 433, 434 (2004), quoting from *Commonwealth* v. *Milo M.*, 433 Mass. 149, 151 (2001). See G. L. c. 275, § 2. Though not explicitly stated, communication is a critical element "of the threat in the sense that it must be uttered, not idly, but to the target, to one who the defendant intends to pass it on to the target, or to one who the defendant should know will probably pass it on to the target." *Commonwealth* v. *Maiden, supra* at 435. When the threat is communicated directly, there is usually very little doubt about intent. See, e.g., *Commonwealth* v. *Sholley*, 432 Mass. 721, 724-725 (2000), cert. denied, 532 U.S. 980 (2001). The issue, however, is more difficult to resolve when an intermediary is involved. See *Commonwealth* v. *Furst*, 56 Mass. App. Ct. 283, 285 (2002).

the peace in *Federico*, the court refused to do so on "the basis of his conduct at the time of his arrest." *Ibid.* The court held that where the evidence adduced failed to demonstrate that "the defendant's conduct [was] disruptive, violent or threatening," it was insufficient to support a conviction. *Ibid.* Here, the Commonwealth presented evidence that showed that the defendant was not only "uncooperative," but that he was "flailing" and "shouting," and that he caused a "commotion." The circumstances described in the *Federico* footnote are distinguishable from the facts of this case.

[5]To satisfy intent, we look at more than a defendant's specific intent that his threats be made to the target; we also look at whether he "should reasonably have expected that it would be communicated to [the target] by [Emmett]." *Commonwealth* v. *Simmons*, 69 Mass. App. Ct. 348, 351 (2007), quoting from *Commonwealth* v. *Maiden*, 61 Mass. App. Ct. 433, 434 (2004). To adopt the defendant's standard would create situations where a defendant who conveys to an intermediary a threat to harm another (the target), but who does not expressly instruct the intermediary to convey that threat to his intended target, would have the simple explanation that it was not his purpose to have the threat communicated. That is not the law.

When an intermediary separates the defendant from his intended target, "the Commonwealth must prove, beyond a reasonable doubt, that the defendant intended that the threat be communicated through the intermediary. . . . In such cases, the defendant's intent need not be express and may be proved by circumstantial evidence. . . . 'Thus, when a defendant utters a threat to a third party who "would likely communicate it to [the ultimate target]," . . . the defendant's act constitutes evidence of [his] intent to communicate the threat to the intended victim.' " *Ibid.* (citations omitted). Moreover, "[i]n analyzing a putative threat, we eschew a technical parsing of the words used and instead consider the entire context in which a statement is made, including the defendant's actions and demeanor at the time, and prior communications between the defendant and the recipient." *Commonwealth* v. *Troy T.*, 54 Mass. App. Ct. 520, 528 (2002).

We need to address only the question whether the defendant's conduct evidenced an intent to communicate his threat through the intermediary.[6] We think a reasonable fact finder could draw the inference that a defendant who enters a police station should reasonably have expected that a stranger who saw him point his finger at a group of police officers and pantomime the killing of those officers, while uttering the words, "[t]he next time I come in here, boom, boom, boom, boom. Every . . . one of them. Nobody will be standing," would communicate that threat to the officers. It appears that the defendant would have no expectation of silence on Emmett's part. Compare *Commonwealth* v. *Meier*, 56 Mass. App. Ct. 278, 282 (2002) (the defendant communicated her intentions to the intermediary, an attorney, whom she believed "to be in league" with the intended target, also an attorney). Combining these actions — the defendant's "volcanic" posturing in a police station (shortly before uttering those words), his prior statement that he was a better shot than the policemen — with a "climate of apprehension," the statements of the defendant's apparent intent, and the probable awareness that he was communicating with someone (here, a stranger) who would likely pass it on to the targets, leads to the conclusion that the evidence constituting a threat was more than sufficient. See *Commonwealth* v. *Maiden, supra* at 435. See also *Commonwealth* v. *Simmons*, 69

---

[6]We are satisfied that all the other elements constituting a threat are present.

Mass. App. Ct. 348, 351 (2007) (conviction upheld where the defendant disclosed to a court-ordered therapist his intention to kill the intended target after the therapist told him such disclosures were not privileged and would be communicated to the "appropriate authorities"). Moreover, the threatening gesture was made in a public area, plainly visible to the police officers themselves. Though there is nothing in the record to indicate that any police officer observed the gesture, the lack of any attempt at concealment belies any suggestion that the defendant merely sought to confide solely in Emmett. Compare *Commonwealth* v. *Maiden*, *supra* at 434. Contrast *Commonwealth* v. *Furst*, 56 Mass. App. Ct. at 285-286 (conviction overturned where the intermediary was solicited to murder the intended target, not to communicate the threat), and *Commonwealth* v. *James*, 73 Mass. App. Ct. 383, 387 (2008) (same).

The instant case is distinguishable from *Commonwealth* v. *Troy T.*, *supra* at 525-526. There, "[t]he question . . . [was] whether a defendant can be found guilty beyond a reasonable doubt where . . . the alleged threat was communicated to its purported target by a third party to whom the communication of the threat by the [defendant] was itself indirect."[7] *Id.* at 525. Included among the factors the court suggested might be permissible to support an inference of a defendant's intention to communicate a threat were whether the "[defendant] made his comment at an abnormal vocal level, glanced at [the intermediary] or other nonparticipants as he made it, gestured in an attention-seeking fashion, or knew that [the intermediary] regularly eavesdropped on conversations and dispersed overheard comments to others." *Id.* at 527. Here, Emmett was no eavesdropper; the defendant sat down, closed the distance between himself and Emmett, and spoke to him directly while gesturing.

The defendant's motion for a required finding of not guilty was properly denied.

*Judgments affirmed.*

---

[7] In *Troy T.*, the court held that an "eavesdropper" has an "onerous" burden to prove that the defendant intended to use her as an intermediary to communicate to the target, absent "any contextual details that might substantiate such an inference." *Id.* at 527.