LEONARDO L., COMMONWEALTH vs., 100 Mass. App. Ct. 109

 
 COMMONWEALTH vs. LEONARDO L., a juvenile.

100 Mass. App. Ct. 109
 June 2, 2021 - August 4, 2021

Court Below: Juvenile Court, Essex County
Present: Green, C.J., Blake, & Lemire, JJ.

 

Threatening. Delinquent Child. Probable Cause. Juvenile Court, Delinquent child. Evidence, Juvenile delinquency, Intent, Threat. Constitutional Law, Freedom of speech and press. Intent. Practice, Criminal, Juvenile delinquency proceeding, Complaint, Dismissal. Words, "Threatened."

A Juvenile Court judge erred in dismissing, prior to arraignment, a delinquency complaint charging the juvenile with threatening to commit a crime, where the juvenile's threat to kill his teacher, which was made to an assistant principal at a school meeting convened due to concerns raised by the teacher the day before, was made under circumstances that reasonably could have caused the teacher (to whom the juvenile knew or should have known that the assistant principal would communicate the threat) to fear that the juvenile had the intention and the ability to carry out the threat; and where the statements were not pure speech protected by the First Amendment to the United States Constitution or art. 16 of the Massachusetts Declaration of Rights. [111-116]

COMPLAINT received and sworn to in the Essex County Division of the Juvenile Court Department on October 28, 2019.

 A motion to dismiss was heard by Kathryn M. Phelan-Brown, J.

 Kathryn L. Janssen, Assistant District Attorney, for the Commonwealth.

 Lauren E. Russell, Committee for Public Counsel Services, for the juvenile.

 BLAKE, J. Prior to the juvenile's arraignment, and over the Commonwealth's objection, a judge of the Juvenile Court dismissed a delinquency complaint charging the juvenile with threatening to commit a crime (to wit: kill his teacher), in violation of G. L. c. 275, § 2. The judge found that the complaint was not supported by probable cause on the element of fear of harm. [Note 1] On appeal, the Commonwealth argues that the threat was made in 

 Page 110 

circumstances that could reasonably have caused the teacher to fear that the juvenile had the intention and the ability to carry out the threat. The juvenile responds that his conduct consisted solely of pure speech that is protected by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights, the statements were not a true threat, and the application for complaint failed to establish probable cause for any of the elements of threats. Although we think it is a close question, we agree with the Commonwealth and reverse.

 Background. "We describe the facts as set forth in the police incident report filed [by school resource officer (SRO) Peter Sutera of the Gloucester police department] in support of the application for the [delinquency] complaint." Commonwealth v. Humberto H., 466 Mass. 562, 563 (2013). On Thursday, October 3, 2019, the then thirteen year old juvenile was called to the assistant principal's office for a meeting that was scheduled as a result of an e-mail message the juvenile's teacher had sent the day prior. The teacher had requested an intervention with the juvenile because he was "becoming [unreachable] in class" and "more and more defiant and oppositional." When the juvenile was told what the meeting was about, he "went off on a tangent," stating that "[the teacher] makes me so angry." As the assistant principal attempted to deescalate the situation, the juvenile "postured up in the chair, jammed his hands in his pockets and began rocking back and forth." The juvenile became increasingly angry; his voice got "louder and louder." As he became more agitated, the juvenile said, "[The teacher] makes me so angry! I want to kill that bitch." The assistant principal stopped the conversation. After a period of silence, the assistant principal walked the juvenile to his locker, but he remained "amped up."

 Ultimately these events were reported to the SRO on Monday, October 7, 2019. The SRO's report referenced "other incidents in the school yard with [the juvenile] clenching his fists and breathing heavily" over, e.g., a basketball game. The SRO also noted that deescalation methods do not work with the juvenile, and that once the juvenile "is to that level he is very dangerous to staff and other children." The principal confirmed that she too witnessed "the same fist clenching behavior" when she discussed disciplinary issues with him.

 The SRO interviewed the teacher, who explained that she sent an e-mail message to the assistant principal asking, "[W]hat[']s up with [the juvenile]?" She stated in the message that she felt

 Page 111 

 that the juvenile "truly hates her and wants to 'kill' her." She said that the juvenile sat at his desk "clenching his fists and banging them on the desk" when she tried to provide him with instruction. The SRO reported that, as he spoke with the teacher, she appeared to be "very weary" of the juvenile and "did not feel comfortable with being in a class with him."

 The SRO's report also referenced cases from the prior school year concerning the juvenile's "behaviors." The report noted the "degree of anger" that the juvenile displayed in the then current school year towards the other children and staff. The SRO filed an application for a complaint charging the juvenile with threatening to commit a crime.

 Discussion. 1. Motion to dismiss. "[A] motion to dismiss a complaint [for lack of probable cause] 'is decided from the four corners of the complaint application, without evidentiary hearing.'" Commonwealth v. Newton N., 478 Mass. 747, 751 (2018), quoting Humberto H., 466 Mass. at 565. A motion to dismiss will be allowed if the application does not establish probable cause. See Commonwealth v. DiBennadetto, 436 Mass. 310, 313 (2002). "To establish probable cause, the complaint application must set forth 'reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense'" (citation omitted). Newton N., supra. "Probable cause requires 'more than mere suspicion,' but 'considerably less than proof beyond a reasonable doubt, so evidence that is insufficient to support a guilty verdict might be more than sufficient to establish probable cause'" (citations omitted). Id. We review the judge's probable cause determination de novo and assess the application in the light most favorable to the Commonwealth. See id.; Commonwealth v. Geordi G., 94 Mass. App. Ct. 82, 85 (2018).

 2. Threatening to commit a crime. A threat, although undefined by statute, has been formulated in the case law to mean when someone "expresses an intention to inflict a crime on another, has the ability to carry out that crime, causes the victim to fear harm, and does so in circumstances that make the victim's fear justifiable." Commonwealth v. Sholley, 432 Mass. 721, 727 (2000), cert. denied, 532 U.S. 980 (2001). See Commonwealth v. Hokanson, 74 Mass. App. Ct. 403, 406 (2009). "Whether the threat was made in attending 'circumstances that would justify apprehension' is measured by means of an objective standard" (citation omitted). Commonwealth v. Kerns, 449 Mass. 641, 653 n.18 (2007). "In analyzing 

 Page 112 

a putative threat, we eschew a technical parsing of the words used and instead consider the entire context in which a statement is made, including the [juvenile's] actions and demeanor at the time, and prior communications between the [juvenile] and the recipient." Commonwealth v. Troy T., 54 Mass. App. Ct. 520, 528 (2002).

 a. Intent. Here, the threat was made at a school meeting convened due to concerns raised the day prior by the juvenile's teacher, including the teacher's view that the juvenile hated her and wanted to kill her. The juvenile's demeanor, escalating anger and agitation, and his increasingly loud voice during the meeting with the assistant principal, an authority figure with the power to discipline the juvenile, all place the threat in context. See Commonwealth v. Milo M., 433 Mass. 149, 155 (2001) ("the juvenile's intent may be inferred from his very angry demeanor"). See also Commonwealth v. Elliffe, 47 Mass. App. Ct. 580, 583 (1999) (defendant's angry demeanor supported inference defendant might carry out threat "either presently or in the future"). In addition, communication is a key consideration when determining whether a statement constitutes a threat. Cf. Hokanson, 74 Mass. App. Ct. at 406-407 (addressing sufficiency of evidence of threatening to commit crime).

 "[W]hen a defendant utters a threat to a third party who 'would likely communicate it to [the ultimate target],' . . . the defendant's act constitutes evidence of [his] intent to communicate the threat to the intended victim" (citations omitted). Hokanson, 74 Mass. App. Ct. at 407. That the threat was communicated to the assistant principal, therefore, does not alter our result, because the juvenile knew or should have known that the assistant principal would communicate the threat to the teacher. See Commonwealth v. Maiden, 61 Mass. App. Ct. 433, 435 (2004) ("a threat requires 'communication' of the threat in the sense that it must be uttered, not idly, but to the target, to one who the defendant intends to pass it on to the target, or to one who the defendant should know will probably pass it on to the target"). See also Commonwealth v. Meier, 56 Mass. App. Ct. 278, 281-282 (2002) (defendant knew or should have known threat communicated to lawyer attempting to collect debt would communicate threat to intended victim). Contrast Commonwealth v. Furst, 56 Mass. App. Ct. 283, 285 (2002) (no intent for third party to convey threat where defendant intended to recruit third party to carry out threat).

 The juvenile argues that his age should be a factor in determining whether he knew or should have known that the threat

 Page 113 

 was likely to be conveyed to the teacher. [Note 2] Although it is true as far as it goes, "[t]he juvenile's argument that his . . . remarks should be viewed [as venting frustration] is one appropriately directed to the fact finder at trial, rather than a proper basis for a pretrial motion to dismiss." Commonwealth v. Valentin V., 83 Mass. App. Ct. 202, 204-205 (2013). Contrast Newton N., 478 Mass. at 753 (at probable cause stage, when juvenile stopped by police, judge may consider juvenile's age when evaluating inference of consciousness of guilt). Indeed, treating age as a form of "mental impairment arising from the limitations of the adolescent brain to control impulses, foresee consequences, and temper emotions . . . is simply not within the probable cause calculus." Id.

 b. Ability to carry out threat and reasonable apprehension. Whether there is probable cause to believe that the juvenile has the ability to commit the threatened crime may be demonstrated by circumstantial evidence. See Milo M., 433 Mass. at 155. "[T]he absence of immediate ability, physically and personally, to do bodily harm [does not] preclude[] [a probable cause finding of] threats." Commonwealth v. Ditsch, 19 Mass. App. Ct. 1005, 1005 (1985). See Milo M., supra at 155-156. "[I]t is the intent to threaten rather than the intent to carry out the threat that is dispositive." Commonwealth v. Chou, 433 Mass. 229, 235 (2001), citing Rogers v. United States, 422 U.S. 35, 46-47 (1975) (Marshall, J., concurring). Indeed, the juvenile's ability to carry out the threat is closely tied to the teacher's justifiable apprehension. See Milo M., supra at 152 ("As the juvenile concedes . . . it was reasonable to fear that the [juvenile] had the intention and ability to carry out the threat" [quotation omitted]). In determining probable cause, it does not matter that some of the statements seemingly contradict an intent or ability to carry out the threats so long as "the context in which the allegedly threatening statement was made and all of the surrounding circumstances" demonstrate an intent or ability to commit a crime that justifiably places the victim in fear. Sholley, 432 Mass. at 725. See Commonwealth v. Walters, 472 Mass. 680, 693 n.29 (2015), S.C., 479 Mass. 277 (2018) ("Where a defendant has been charged with threatening to commit a crime . . . based on an ambiguous statement or writing, we have . . . analyzed the substance of the communication as well as the surrounding context to determine whether the communication expressed an intent to harm the recipient and caused that person reasonable fear").

 Page 114 

 Here, the teacher expressed apprehension and concern that the juvenile might carry out his threat. In any event, criminal threats do not require actual fear or apprehension in the victim.

"[T]he law seems to be settled that a threat need not cause actual fear or apprehension in the victim. The test is an objective one: whether the threat by its content in the circumstances was such as would cause the target of the threat to fear that the threatened crime or injury might be inflicted."

Maiden, 61 Mass. App. Ct. at 436, citing Commonwealth v. De Vincent, 358 Mass. 592, 595 (1971). See Kerns, 449 Mass. at 653 n.18 ("We do not require proof that the threat actually caused the victim of the threat to fear that the threatened crime or injury might be inflicted"). And, the context of the school setting is relevant to the objective analysis whether the teacher's apprehension was justifiable given the "climate of apprehension" concerning school violence. [Note 3] Milo M., 433 Mass. at 156. That the threat was made at school, to the assistant principal, with the teacher as the juvenile's target, cannot be divorced from the context of school violence. See id. at 156-158.

 Contrary to the juvenile's argument, his hostility was not generalized anger, but rather, it was directed at this specific teacher. Indeed, the teacher foresaw the subsequent threat when she contacted the assistant principal about the juvenile's escalating classroom behavior. Moreover, the school reported other instances of anger issues with the juvenile in the then current school year and the prior one. See Milo M., 433 Mass. at 156 (prior discipline of and familiarity with juvenile's history at school relevant to apprehension of ability to carry out threat). Taken together, the juvenile's demeanor when he made the threat, his escalating behavior in school, and the specific anger he expressed towards his teacher established the requisite probable cause that the juvenile had threatened to commit a crime. [Note 4]

 c. Protected speech. Finally, the juvenile argues that dismissal of the complaint was warranted on a wholly separate basis. He contends that the statements he made were solely pure speech,

 Page 115 

 protected by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights. The juvenile categorizes his statements as "no more than emotional bluster" reflective of "adolescent angst," and thus constitutionally protected. To be sure, free speech issues are resolved by limiting the crime at issue to apply to constitutionally unprotected speech, such as "true threats." Sholley, 432 Mass. at 727.

"'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'"

O'Brien v. Borowski, 461 Mass. 415, 423 (2012), quoting Virginia v. Black, 583 U.S. 343, 359-360 (2003). This class of unprotected speech was developed "to help distinguish between words that literally threaten but have an expressive purpose such as political hyperbole, and words that are intended to place the target of the threat in fear, whether the threat is veiled or explicit." Chou, 433 Mass. at 236. "The assessment whether the defendant made a threat is not confined to a technical analysis of the precise words uttered." Sholley, 432 Mass. at 725.

 When viewed through the lens of a probable cause determination, the juvenile's statements here are readily distinguished from words that literally threaten but have an expressive purpose, such as political hyperbole. Instead, the juvenile's words were intended to place the target of the threat, here, the teacher, in fear. Compare Van Liew v. Stansfield, 474 Mass. 31, 38 (2016) (public accusations regarding character of public official "plainly were remarks about [the official's] performance . . . as a public official" and thus was protected speech), with Chou, 433 Mass. at 235-237 (threatening poster identified victim, contained sexually aggressive language directed at her, identified victim as missing, and had no expressive purpose other than to place victim in fear and thus was not protected speech). Consequently, there is probable cause that the juvenile's statements do not constitute protected 

 Page 116 

speech. [Note 5]

 Conclusion. The order allowing the juvenile's motion to dismiss is reversed.

So ordered.

FOOTNOTES
[Note 1] The judge dictated her findings into the record. In a margin order, she denied the Commonwealth's motion for reconsideration. 

[Note 2] The juvenile was about one month shy of age fourteen at the time of the incident. 

[Note 3] We note that the Supreme Judicial Court has taken judicial notice of "the actual and potential violence" at schools. Milo M., 433 Mass. at 156. 

[Note 4] For the reasons discussed supra, we reject the juvenile's contention that the complaint application was devoid of probable cause for all of the elements of threatening to commit a crime. 

[Note 5] We acknowledge that some might question the decision by the school officials -- or even the district attorney -- to pursue a criminal prosecution rather than address the juvenile's conduct by some other means. However, we also observe that the separation of powers vests in the executive branch, rather than the judicial branch, the authority to make those decisions, and our review is limited to the question of probable cause in this case. And, while the record contains a fleeting reference to a prior case against the juvenile, we do not know whether that case, or some other history played a role in the decision whether and how to proceed in this case. See Commonwealth v. Newberry, 483 Mass. 186, 196-197 (2019). See also Commonwealth v. Moore, 93 Mass. App. Ct. 73, 77 (2018) ("the executive power affords prosecutors wide discretion in deciding whether to prosecute a particular defendant, and that discretion is exclusive to them" [citation omitted]). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.