NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13793

COMMONWEALTH  vs.  USHON U., a juvenile.

Middlesex.     January 5, 2026. - April 24, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.

Social Media.  Threatening.  Evidence, Threat, Juvenile
    delinquency.  Practice, Criminal, Instructions to jury,
    Objection, Juvenile delinquency proceeding.  Practice,
    Civil, Motion to dismiss.  Statute, Construction.  Probable
    Cause.  Delinquent Child.  Juvenile Court, Delinquent
    child.

Complaint received and sworn to in the Middlesex County
Division of the Juvenile Court Department on January 24, 2024.

A motion to dismiss was heard by Brian P. Frane, J., and
the case was tried before Joanna Rodriguez, J.

The Supreme Judicial Court granted an application for
direct appellate review.

Dennis M. Toomey for the juvenile.
Hallie White Speight, Assistant District Attorney, for the
Commonwealth.
Taylor Henley, Committee for Public Counsel Services, Leon
Smith, & Claudia Leis Bolgen, for youth advocacy division of the
Committee for Public Counsel Services & others, amici curiae,
submitted a brief.

WOLOHOJIAN, J.  The primary issue in this appeal is whether in order to obtain a conviction or adjudication of delinquency under G. L. c. 269, § 14 (b), which criminalizes the making of threats against places, the Commonwealth must prove as an element of the offense that the individual who made the threat "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." Counterman v. Colorado, 600 U.S. 66, 69 (2023).  We conclude that the Commonwealth must so prove.  Further concluding that the evidence was sufficient to sustain the jury's adjudication of delinquency, and that probable cause supported the complaint, we remand for further proceedings consistent with this opinion.[1]

Background.  The juvenile, a high school student, reposted[2] on his public TikTok[3] account an image of a man in a school

---

[1] We acknowledge the amicus brief submitted in support of the juvenile's argument by the youth advocacy division of the Committee for Public Counsel Services, Citizens for Juvenile Justice, and the Massachusetts Association of Criminal Defense Lawyers.

[2] According to TikTok, a repost is a way "to share videos you find interesting with your friends and community on their For You [personalized video] feed."  TikTok Support, https://www.tiktok.com/support/faq_detail?id=7543897459731421752&category=web_account [https://perma.cc/6XGF-8YEX].

[3] "TikTok is a social media platform that allows users to create, publish, view, share, and interact with short videos overlaid with audio and text."  TikTok Inc. v. Garland, 604 U.S. 56, 63 (2025).  "Opening the TikTok application brings a user to the 'For You' page -- a personalized content feed tailored to the user's interests."  Id.  This personalized content feed is

hallway aiming an assault rifle with his finger on the trigger while carrying additional arms on his hip.  Blazoned across the image was the declaration "Me at School." (together, school shooting image or image).  After another student at the juvenile's school, who had previously been the juvenile's girlfriend, saw the image and alerted school officials, the juvenile was charged with communicating a threat against a place in violation of G. L. c. 269, § 14 (b).  He was tried before a jury in the Juvenile Court who returned a finding of delinquency, and the juvenile appealed.  The judge subsequently vacated the delinquency finding, continued the case without a finding, and imposed conditions of probation until the juvenile's nineteenth birthday.[4]  The case is now before us after we allowed the juvenile's application for direct appellate review.

---

created using a proprietary algorithm to recommend videos based on "[e]ach interaction a user has on TikTok[, such as] watching a video, following an account, [or] leaving a comment."  Id.

[4] The Juvenile Court docket sheet shows that the underlying case was dismissed when the juvenile turned nineteen and completed his sentence of probation.  Nonetheless, the Commonwealth does not argue that this appeal is moot.  And, given the potential harmful collateral consequences of a "delinquency complaint, with or without a finding of delinquency," we exercise our discretion to reach the merits of the juvenile's arguments on appeal.  Commonwealth v. Preston P., 483 Mass. 759, 768 (2020).

Discussion. 1. Effect of Counterman on prosecutions under G. L. c. 269, § 14 (b). General Laws c. 269, § 14 (b), was enacted in the wake of the terrorist attacks on September 11, 2001, and is "intended to punish the communication of any threat that a deadly, dangerous, or destructive device, substance, or item is or will be present or used at a specified place or location." Commonwealth v. Kerns, 449 Mass. 641, 652 (2007). In order to establish a violation of the statute, the Commonwealth must prove "(1) that the defendant wilfully communicated, or caused to be communicated, a threat (2) to use or have present (3) one of an enumerated list of dangerous devices, substances, or items capable of causing death, serious bodily injury, or substantial property damage (4) at a place or location." Id. at 651. The statute does not require that "the person to whom the threat is communicated be a potential target of the threatened crime." Id. at 652.

The statute criminalizes the making of a threat concerning a particular place or location. When such threats are "'serious expressions' conveying that a speaker means to 'commit an act of unlawful violence,'" they are "true threats" (alteration omitted). Counterman, 600 U.S. at 74, quoting Virginia v. Black, 538 U.S. 343, 359 (2003). See O'Brien v. Borowski, 461 Mass. 415, 423 (2012), abrogated on another ground by Seney v. Morhy, 467 Mass. 58, 61-62 (2014) (adopting United States

Supreme Court's definition of "true threat" in Black).
Historically, true threats lay "outside the bounds" of the
protection of the First Amendment to the United States
Constitution. Counterman, 600 U.S. at 72. But because of the
potential chilling effect criminalization of true threats may
have on free speech, the Supreme Court recently concluded that
the First Amendment requires proof of an element of subjective
mens rea in order to sustain a conviction in true threat cases.
Id. at 77-78. Specifically, the Court held that the State is
required to prove that a speaker "consciously disregarded a
substantial risk that his communications would be viewed as
threatening violence." Id. at 69.

After the Supreme Court reached this conclusion in
Counterman, we applied its reasoning and holding in a case
involving a prosecution under G. L. c. 275, § 2, which
criminalizes threats to commit a crime. See Commonwealth v.
Cruz, 495 Mass. 110, 111 (2024). We concluded that G. L.
c. 275, § 2, must be construed to require, among other things,
that the Commonwealth prove "that the defendant consciously
disregarded a substantial risk that the communication would be
viewed as threatening violence and delivered it anyway." Cruz,
495 Mass. at 115.

We see no principled reason not to reach the same
conclusion here with respect to G. L. c. 269, § 14 (b). To be

sure, there are differences between the two statutes. Most notably, whereas G. L. c. 275, § 2, protects people and their possessions, G. L. c. 269, § 14 (b), protects places or locations. See Kerns, 449 Mass. at 654. But the statutes share the common feature of criminalizing the making of threats, and for this reason, we are of the view that the holding and analysis of Counterman applies to both in equal measure. Accordingly, in order to sustain a conviction under G. L. c. 269, § 14 (b), the Commonwealth must prove, in addition to the elements set out in the statute, see Kerns, 449 Mass. at 651, that the defendant (or, as in this case, the juvenile) consciously disregarded a substantial risk that his communication would be viewed as threatening violence and made it, or caused it to be made, nonetheless.

We turn now to the implications of this holding for the case at hand. The juvenile was tried in November 2024, after the Supreme Court's decision in Counterman and shortly before our decision in Cruz. But the jury did not receive an instruction consistent with Counterman. Instead, the jury were instructed that the Commonwealth needed only to prove "[(1)] that the juvenile engaged in a communication or caused a communication; [(2)] that the communication constituted a threat that was a firearm or a shotgun or a rifle, or an item capable of causing a death, serious bodily injury, or substantial

property damage will be used [at] a place or location, or is present or will be present at a place or location; and [(3)] that the juvenile's actions were done willfully and not by accident or mistake."  The jury were instructed that proof of willfulness required "only that the acts of the juvenile be willfully performed so long as the acts were intentional and not due to an accident or inadvertence."

The juvenile argues, the Commonwealth concedes, and we agree that the absence of a Counterman instruction was error.  Where the parties diverge, however, is over whether the error was preserved.  At the conclusion of the instructions, the juvenile objected "to the instruction on the lawfulness and the lack of intent, as well as the threats instruction."  The juvenile's counsel did not mention Counterman or request (or object to the absence of) a Counterman-type instruction.

Although an objection need not be phrased with perfect precision, something more than the ambiguous objection made here was required to alert the judge to the missing Counterman instruction and to preserve the issue for appeal.  "It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any."  Commonwealth v. McDuffee, 379 Mass. 353, 357 (1979).  See Mass. R. Crim. P.

24 (b), 378 Mass. 895 (1979).  See also Commonwealth v. Chapman, 433 Mass. 481, 489 (2001).  Because that did not occur here, we review to determine whether the error resulted in a substantial risk of a miscarriage of justice.[5]  And where, as here, the error was the omission from the charge of an element of the Commonwealth's required proof, the substantial risk analysis requires that we determine "whether the presence of the omitted element was an ineluctable inference from the evidence at trial."  Commonwealth v. Desiderio, 491 Mass. 809, 810 (2023).

Although, as will be set out in further detail below in our discussion of the sufficiency of the evidence, the jury could have reasonably and permissibly inferred that the juvenile consciously disregarded a substantial risk that the school shooting image he reposted would be viewed as threatening violence, that inference was not inescapable.  There was no direct evidence about the juvenile's mental state, and the circumstantial evidence was not so overwhelming as to compel a finding of his conscious disregard.  See Desiderio, 491 Mass. at

---

[5] The juvenile argues that he should be relieved of the obligation to make a clear objection under the so-called clairvoyance exception to our waiver doctrine.  That exception does not apply where, as here, the constitutional theory on which the juvenile relied was sufficiently developed at the time the juvenile should have raised it at trial.  See Commonwealth v. Guardado, 491 Mass. 666, 686, S.C., 493 Mass. 1 (2023), cert. denied, 144 S. Ct. 2683 (2024).  As we have noted, Counterman was decided before the juvenile's trial.

821 (even "powerful and persuasive story" presented by circumstantial evidence may be insufficient to make inference of knowledge inescapable). Accordingly, the absence of a Counterman instruction created a substantial risk of a miscarriage of justice. Cf. Cruz, 495 Mass. at 113-114 (vacating conviction of threatening to commit crime where jury were not instructed on requisite subjective mental state).

2. Sufficiency of the evidence. The juvenile contends that the evidence was insufficient to prove (1) that he willfully reposted the image or (2) that he consciously disregarded a substantial risk that the image would be seen as threatening violence.[6] In assessing the sufficiency of the evidence, we take the evidence in the light most favorable to the Commonwealth to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). "Evidence relied on to support [an adjudication of delinquency] 'may be entirely circumstantial,'" and "[t]he inferences a jury may draw from the

---

[6] The juvenile also argues that the Commonwealth was required to prove that the juvenile subjectively intended for others to feel threatened. But whether the speaker intends to convey a threat is "not part of what makes a statement a threat." Counterman, 600 U.S. at 74. Rather, "[t]he existence of a threat depends . . . on what the statement conveys to the person on the other end" (quotation and citation omitted). Id.

evidence need only be reasonable and possible and need not be necessary or inescapable" (quotation omitted).  Commonwealth v. Shakespeare, 493 Mass. 67, 80 (2023), quoting Commonwealth v. Whitaker, 460 Mass. 409, 416 (2011).  Taken in this light, the evidence showed the following.

The juvenile, a high school student, reposted on his public TikTok page an image showing the silhouette of a male figure in a school hallway, standing in a firing stance with an assault rifle on his shoulder and his finger on the trigger, aiming toward what may be inferred to be a classroom.  Prominently placed across the image was the phrase "Me at School."[7]  Because the juvenile's TikTok account was public, anyone could see what he posted, or reposted, on the account.  The juvenile's former girlfriend, Beth,[8] came across the image while scrolling through the juvenile's TikTok account.  Beth "scroll[ed] and scroll[ed]" through the juvenile's account before she came across the image. The image terrified Beth, and she alerted her mother and school officials to the fact that it appeared on the juvenile's TikTok account.  She also took a screenshot of the image and thus preserved it on her cell phone.

---

[7] There was no evidence to suggest that the juvenile created the image or affixed the "Me at School" message to it.

[8] A pseudonym.

Two steps are required to repost an image on one's TikTok account. First, the user must select an option toward the bottom of the cell phone screen to bring up a menu of further options. Once that menu appears, the user must then select the option to repost. There is a different sequence of movements required to indicate that one is not interested in an image posted by another person. The jury could conclude that the juvenile deliberately took the steps necessary to repost the image as opposed to taking the steps needed to indicate that he was not interested in it. See Commonwealth v. Buttimer, 482 Mass. 754, 761 (2019) ("To the extent that conflicting inferences may be drawn from the evidence, it is for the jury to decide which version to credit" [citation omitted]).

Three days after Beth first saw the image, the school resource officer (a member of the local police department) contacted the juvenile's parents and alerted them to the juvenile's reposting of it. The officer requested, and the parents assented to, a search of their home for weapons given the concern for school safety. The officer then spoke to the juvenile in his parents' presence about the juvenile's reposting of the image and how it "puts people in fear." The juvenile acknowledged that the image reflected his "dark sense of humor." But the juvenile claimed that he had reposted the image by accident and removed it immediately from his account once he

realized the mistake.  The school resource officer confirmed that the image was not on the juvenile's cell phone.

The jury were properly instructed that the Commonwealth was required to prove beyond a reasonable doubt that the juvenile willfully communicated a threat.  See Kerns, 449 Mass. at 651. In addition, because a defense of accident was fairly raised by the juvenile's statement to the school resource officer, the jury were also instructed that the Commonwealth had the burden to prove that the juvenile had not reposted the image by accident.  See Commonwealth v. Ferguson, 30 Mass. App. Ct. 580, 583 (1991) ("Where the evidence raises the possibility of accident, the defendant is, as [a] matter of due process, entitled upon request to a jury instruction that the Commonwealth has the burden of proving beyond a reasonable doubt that the act was not accidental").

Here, the jury could infer that the juvenile willfully communicated the image and its message by taking the steps necessary to repost it to his public TikTok account.  Cf. Hernandez v. Phoenix, 43 F.4th 966, 978 (9th Cir. 2022) (publicly posting on social media suggestive of intent to communicate to public).  Although the juvenile told the school resource officer that he had reposted the image accidentally and deleted it immediately after he realized he had done so, the jury were not required to credit his explanation of events.  See

Commonwealth v. Carino, 496 Mass. 783, 785 (2025).  It is true that the image no longer appeared on the juvenile's cell phone by the time the school resource officer spoke with the juvenile.[9] But the jury heard evidence that the officer had alerted the juvenile's parents before coming to the house not only of the nature of the image the juvenile had posted, but also of the officer's desire to search the house for weapons and to speak with the juvenile about the image.  The jury could use their common sense and life experience to help them decide whether it was more likely that the juvenile deleted the image immediately after realizing he had posted it in error as he claimed or at some later point, such as after learning that the school resource officer had obtained his parents' consent to search the home and speak with him about an image showing a man committing, or about to commit, a school shooting.  See Commonwealth v. Gerhardt, 477 Mass. 775, 787 (2017) ("Jurors may use their common sense in evaluating whether the Commonwealth introduced sufficient evidence to satisfy its burden of proof").  See also Instructions 1.120 & 2.120 of the Criminal Model Jury

---

[9] Although the school resource officer testified that the image was no longer on the juvenile's cell phone, that testimony is not entirely free from ambiguity, in that the officer did not say whether he checked to see whether the image remained on the juvenile's TikTok feed.

Instructions for Use in the District Court (2019) (jurors may use common sense and life experience in determining facts).

We are equally unpersuaded by the juvenile's argument that the evidence was insufficient to prove beyond a reasonable doubt that he consciously disregarded a substantial risk that the image would be seen as threatening violence. To begin with, as we have already noted, the image showed a male figure in a school hallway, in a shooting stance with his finger on the trigger of an automatic rifle aimed toward what can be inferred to be a classroom, while bearing additional arms. The jury could conclude that the juvenile -- who was a high school student -- would have understood that the image depicted a school shooting and would be seen by others as depicting such. Given the frequency of highly publicized, school-related shootings by students, "such violent episodes are matters of common knowledge." Commonwealth v. Milo M., 433 Mass. 149, 156 (2001). In addition, the jury could find that the juvenile adopted the phrase "Me at School" when he reposted it, thus referring to himself and his own high school. The jury could further conclude that the juvenile consciously disregarded a substantial risk that reposting the image would be seen as threatening violence based on the nature of the image and its accompanying words, the juvenile's acknowledgement that the image reflected his "dark sense of humor," and his subsequent

deletion of it, which inferably indicated his awareness that he should not have reposted it in the first place.  See Commonwealth v. MacCormack, 491 Mass. 848, 857-858 (2023) (defendant deleting evidence that cast him in unfavorable light indicative of consciousness of guilt).

In sum, taken in the light most favorable to the Commonwealth, the evidence was sufficient to prove beyond a reasonable doubt that the juvenile acted willfully and with conscious disregard to a substantial risk that reposting the school shooting image would be viewed as threatening violence.

3.  Motion to dismiss the complaint.  On the same grounds that the juvenile contends that the evidence at trial was insufficient, the juvenile argues that probable cause did not support the complaint and that his motion to dismiss was erroneously denied.  "To establish probable cause, the complaint application must set forth reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense" (citation omitted).  Commonwealth v. Manolo M., 496 Mass. 244, 253 (2025).  We take the information contained within the four corners of the complaint application in the light most favorable to the Commonwealth to determine whether there is probable cause as to each essential element of the offense.  See id.; Commonwealth v. Newton N., 478 Mass. 747, 751 (2018).  The

sufficiency of the information supporting a complaint is a question of law we review de novo.  Manolo M., 496 Mass. at 253.

The complaint application here was supported by the school resource officer's report, the contents of which largely tracked the evidence that was introduced at trial as we have already set out above; accordingly, we do not repeat it here.[10]  And, having already concluded that the evidence was sufficient to meet the higher standard of proof beyond a reasonable doubt required to sustain the adjudication of delinquency, it requires no additional explanation to conclude that it necessarily meets the lower standard of probable cause needed to support the complaint.  Nonetheless, we note that the information supporting the complaint application was arguably even stronger than the evidence introduced at trial.  Specifically, the officer's report established that the juvenile had given conflicting versions of his conduct to his father, at one point denying that he had ever posted the image and at another point saying that he had posted the image accidentally.  The juvenile's shifting explanations permitted an inference that both explanations were fabrications.  See MacCormack, 491 Mass. at 857 (defendant's fabrication of events to police was consistent with

---

[10] The officer's report did not contain information concerning the steps required to repost an image on TikTok.

consciousness of guilt).  In addition, the report stated that the juvenile had previously had "several interactions with the [local police department] with the threat of violence or violence," that Beth knew that the juvenile tended to "gravitate towards dark things," and that the juvenile was "on a one[-]to[-]one and [was] not allowed to be at school alone." Cf. Milo M., 433 Mass. at 156 (juvenile's disciplinary record at school relevant to sufficiency of evidence of juvenile's ability to carry out threat).

The motion judge correctly denied the motion to dismiss the complaint.

4.  Remaining claims of error.  Finally, the juvenile asks that we review four discrete alleged trial errors. Specifically, he argues that (1) the school resource officer's statement to the juvenile about how the image could be viewed by others was hearsay and should not have been admitted, (2) Beth should not have been permitted to testify as to how to perform certain functions using TikTok, (3) the prosecutor improperly appealed to jury sympathy during closing argument by referring to Beth being "terrified," and (4) the prosecutor misstated evidence during closing.  The juvenile objected to the first two alleged errors; he lodged no objection to the third; and, in response to the juvenile's objection to the fourth, the judge instructed the jury to disregard the prosecutor's comment.

Given the procedural posture of this case, see note 4, supra, it appears unlikely that any of these issues will arise again, and we accordingly decline to address them now.  See Commonwealth v. Crowder, 495 Mass. 552, 571-572, cert. denied, 146 S. Ct. 169 (2025) (declining to address alleged trial errors when it is uncertain whether they will arise at new trial).

Conclusion.  To sustain a conviction or adjudication of delinquency under G. L. c. 269, § 14 (b), the Commonwealth must prove as an element of the offense that the individual who made the threat "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." Counterman, 600 U.S. at 69.  The jury were not given such an instruction, and a substantial risk of a miscarriage of justice resulted from the omission.  The matter is remanded to the Juvenile Court for further proceedings consistent with this opinion.  See Commonwealth v. Preston P., 483 Mass. 759, 774 (2020); Commonwealth v. Rotonda, 434 Mass. 211, 222 (2001).

So ordered.